[No. 41811.    En Banc.    February 24, 1972.]

SNOW'S MOBILE HOMES, INC., *Respondent and Cross-appellant*, v. ALLEN B. MORGAN *et al.*, *Appellants*.

*Christopher T. Bayley, Prosecuting Attorney,* and *Michael L. Cohen, Deputy,* for appellants.

*Rutherford, Kargianis & Austin, George Kargianis,* and *Russell A. Austin, Jr.,* for respondent and cross-appellant.

ROSELLINI, J.—In 1943, the legislature enacted Laws of 1943, ch. 144, imposing an excise tax upon motor vehicles "used, or of the type designed primarily to be used, upon the public streets and highways." That law expressly excluded "motor vehicles or their trailers used entirely upon private property." Section 12 of that act provided that no motor vehicle should be listed and assessed for ad valorem taxation "so long as this act remains in effect."

The legislature in 1955 enacted chapter 139, whereby it imposed an excise tax on certain house trailers not licensed "to operate on the public streets and highways and taxed as motor vehicles under RCW 82.44.020." This chapter, in section 19, provided that trailers subject to the excise tax should be exempt from ad valorem taxes. No mention was made of house trailers in the inventory of a dealer, held for sale, but section 6 provided:

> Except as provided herein, the tax imposed by this chapter is in addition to all other licenses and taxes otherwise imposed.

A similar provision was contained in Laws of 1943, ch. 144, § 7.

In 1961, the legislature amended both the motor vehicle excise tax statute and the house trailer excise tax statute.

Laws of 1961, ch. 15, RCW 82.44 and 82.50. At that time, in amending RCW 82.44.010, "house trailers as defined in RCW 82.50.010" were expressly excluded from the definition of "motor vehicle" and RCW 82.50.180 was enacted, providing for exemption from the operation of the house trailer excise statute of

> Any unoccupied house trailer when it is part of an inventory of house trailers held for sale by a manufacturer or dealer in the course of his business.

In 1967, the house trailer excise tax statute was amended. At that time, vehicles which were previously called "house trailers" were classified as either "travel trailers" or "mobile homes." The 1967 amendments did not affect the question presented in this action. That question concerns the effect to be given to Laws of 1969, Ex. Ses., ch. 225 (RCW 82.50.190), which provided:

> No mobile home or travel trailer which is a part of the inventory of mobile homes or travel trailers held for sale by a dealer in the course of his business and no mobile home or travel trailer with respect to which the excise tax imposed by this chapter is payable shall be listed and assessed for ad valorem taxation.

Section 2 of the act declared that it was necessary for the preservation of the public peace, health and safety, the support of the state government and its existing public institutions and should take effect immediately.

The bill passed the House and Senate on May 2nd. It was signed by the Governor on May 12, 1969.

We are told that during this legislative history, the county assessors had never listed inventories of motor vehicles, travel trailers or mobile homes for ad valorem taxation, and that this had been pursuant to directions of the State Tax Commission and its successor, the Department of Revenue.[1] However, in January 1969, the assistant director of the Department of Revenue advised all county assessors

---

[1] Under prior legislation, Laws of 1937, ch. 228, dealers' stocks of motor vehicles were subject to ad valorem taxes. *State ex rel. Hansen v. Salter,* 190 Wash. 703, 70 P.2d 1056 (1937).

and county auditors that, upon advice of counsel, the department had determined that dealers' inventories of mobile homes and travel trailers were, unlike such inventories of motor vehicles, "not specifically exempt" from ad valorem taxes. The assessors and auditors were therefore advised to assess such inventories.

When the assessors accordingly sent notices to mobile home and travel trailer dealers to list their inventories, most of them requested and were granted extensions of time in which to do so. Only a few had listed their inventories before the day upon which chapter 225 went into effect. In the meantime, they had taken their problem to the legislature and had received the favorable action embodied in that chapter.

Nevertheless, the assistant director of the Department of Revenue, on May 13, 1969, sent another letter to the assessors and auditors, advising them that, "[s]ince the March 31 deadline [RCW 84.40.040] for listing personal property passed before the Governor signed House Bill 542 [chapter 225], the amendment in no way affects the assessment for ad valorem purposes of mobile home and travel trailer inventories for the 1969 assessment roll."

When it learned that it was still the intent of the King County Assessor to require the listing of its inventory, the plaintiff brought this declaratory judgment action on behalf of itself and all others similarly situated, naming the assessor and treasurer defendants and asking for injunctive relief. The Attorney General was not made a party, but no issue has been made of that fact in this court.[2]

The plaintiff sought a declaration either that the 1969 act was meant to apply to the listing and assessing of inventories in 1969, or that such inventories had always been exempt as "motor vehicles" under the language of RCW 82.44.130 (Laws of 1943, ch. 144, § 12); or that inventories listed and assessed after the effective date of the 1969 act were uncollectible under the provisions of the act. The trial

---

[2]*See* RCW 7.24.110, providing that no declaration shall prejudice the rights of persons not parties to the proceeding.

court rejected the first two theories but accepted the third, holding that those who had listed their properties before the effective date of the act were assessable but those who had not done so were exempt.

Both the plaintiff and the defendants have appealed. Both agree that the conclusion reached by the trial court cannot be sustained. As the defendants point out in their brief, if there was an obligation to list inventories, it arose on the first day of January under the provisions of RCW 84.40.020.

■ Const. art. 7, § 1 (amendment 14), provides that all taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax. To hold that those who complied with the directions of the assessor and listed their property before the effective date of the amendatory act are subject to the tax but those who had not done so are exempt would be a manifest violation of this constitutional provision, as well as a denial of equal protection of the laws. It is fundamental that all persons within the same class must be treated equally. *See State ex rel. Namer Inv. Corp. v. Williams,* 73 Wn.2d 1, 435 P.2d 975 (1968) and authorities cited therein.

It is agreed therefore that either the 1969 amendment applied to all assessments in 1969 or it applied to none. The question confronting us is: which of these two results did the legislature intend?

■ The assessor maintains that because the plaintiff's obligation to list its inventory arose on January 1st, the obligation to pay the tax arose on that date and could not be extinguished by the subsequent amendment of the statute. Assuming that the obligation did exist on that date, the legislature nevertheless had the power to extinguish it. In *Gasaway v. Seattle,* 52 Wash. 444, 451, 100 P. 991 (1909), this court said:

> All taxes are levied under the express or implied power of the state. The state can fix the subject of taxation and exempt property. It can limit or extend the time of payment. The authority so delegated, when exercised, is

none the less the execution of the state's power. If it can do all these things, it can take away not only the power to tax but the subjects of taxation as well. No person or municipality can acquire, as against the state, a vested right to taxes, or the right to insist upon the collection of taxes when levied.

*See also North Spokane Irr. Dist. 8 v. Spokane County,* 173 Wash. 281, 22 P.2d 990 (1933), holding that the legislature may abolish a tax lien. The question remains whether the legislature intended to abolish the right to assess and levy ad valorem taxes in the year 1969, when it enacted Laws of 1969, Ex. Ses., ch. 225.

██ We approach this question mindful of applicable rules of construction. First, where a statute is plain, unambiguous and clear on its face, there is no room for construction. *King County v. Seattle,* 70 Wn.2d 988, 425 P.2d 887 (1967). Here the question is whether the act was intended to apply to 1969 assessments. The act itself contains no express language to answer this question. Without the emergency clause, the presumption that statutes are intended to have a prospective rather than a retrospective effect and the presumption against tax exemptions might well lead to the conclusion that the legislature did not intend this law to be retrospective. But the existence of the emergency clause raises an ambiguity. If the statute was meant to apply only to exemptions in future years, there was no apparent necessity for such a clause, since its provisions would control the 1970 assessments if it became effective in the ordinary course of its enactment.

██ It is of course the rule that the courts are obliged to interpret a statute, if possible, so that no portion of it is superfluous, void, or insignificant. *Des Moines v. Hemenway,* 73 Wn.2d 130, 437 P.2d 171 (1968); *see State v. Zornes,* 78 Wn.2d 9, 475 P.2d 109 (1970).

If the emergency clause was intended to have any effect, it must have been the intent that it affect the listing and assessing of property in 1969. But, as we have noted, the legislature could not, in compliance with the constitution,

simply arrest the listing and assessing of inventories on and after May 12, 1969, leaving properties already listed and assessed subject to whatever ad valorem taxes the county should impose in 1969, and exempting only those inventories not previously listed.

The plaintiff urges that the purpose of the legislature, whether or not it intended the act to have retroactive effect, was to clarify the existing law. It points to the fact that the Department of Revenue had for many years, before January 1969, construed RCW 82.44.130 as exempting dealers' inventories of house trailers as well as inventories of other motor vehicles. The legislature accepted this construction, the plaintiff argues, and saw no reason to amend the house trailer excise tax statute until the Department of Revenue changed its construction of the motor vehicle excise tax statute.

But the defendants maintain that these two acts are not ambiguous and that there is no room for administrative construction. If the statutes are in fact unambiguous, the taxing authorities cannot, by the process of "construction" amend them. *Pierce County v. State,* 66 Wn.2d 728, 404 P.2d 1002 (1965).

We find in RCW 82.50 no express exemption of inventories of travel trailers and mobile homes from the ad valorem tax prior to 1969. Vehicles in dealers' inventories are excluded from the definition of "mobile homes and travel trailers." When we turn to RCW 82.44.130, we find the provision that "no motor vehicle shall be listed and assessed for ad valorem taxation." In this statute, dealers' inventories *are,* at least impliedly if not expressly, included within the definition of "motor vehicles." *See* RCW 82.44.010 and .020. The only excise tax imposed upon them, however, is a fee for dealers' plates for any vehicle in the inventory which is actually used. Under RCW 82.44.020, the excise tax is imposed for the "privilege of using a vehicle."

Thus it appears that in the statutory scheme, no excise tax is imposed upon dealers' inventories of travel trailers and mobile homes; only a minimal tax is imposed upon

motor vehicles in dealers' inventories for those vehicles for which dealer's plates are required.

Nevertheless, all inventories of motor vehicles would appear to be exempt from ad valorem taxes under RCW 82.44.130. It must have appeared to the taxing officials that whatever reason the legislature had in mind to justify an exemption of inventories of motor vehicles would apply with equal force to inventories of travel trailers and mobile homes. However, we are unable to find expressed in either statute, prior to 1969, an intent to exempt inventories of the latter from ad valorem taxes.

It is significant that the legislature did not change any words in RCW 82.50, when it amended it in chapter 225, but merely added a provision. There is nothing in the legislative history of the act to show that the members of the legislature actually thought they were clarifying the prior statutes when they enacted chapter 225. The Senate Journal shows that, in answer to a question from a fellow senator on the floor of the Senate, the chairman of the ways and means committee said:

> The reason for the emergency clause in this bill is because the department of revenue discovered early this year that under the construction of the existing law, mobile homes on display on sales lots would be subject to the inventory tax. They notified the county assessors who then notified the mobile home dealers.
>
> This bill was passed as a result of that particular situation to correct it and to *bring the statute into conformity with the practice* of no tax being levied. This emergency clause will prevent the anomaly of county assessors sending out notices on inventory tax on a bill that is going to go into effect to *abolish that tax* in a few months.

(Italics ours.) 1969 Senate Journal at 1155.

This statement does not clearly convey the idea that the amendment was designed to correct a construction which had been placed upon the prior law. Rather, it indicates that the opinion of the committee was that the amendment was designed to "correct" the law itself.

What the statement does make clear, however, is that it

was the understanding of the chairman of the ways and means committee that the emergency clause was included to forestall the imposition of ad valorem taxes in the year 1969.

While statements and opinions of individual legislators generally are not considered by the courts in construing legislation, statements made in answer to questions on the floor by the chairman of the committee in charge of the bill may be taken as the opinion of the committee as to the meaning of the bill. 2 J. Sutherland, Statutes and Statutory Construction § 5021 (3d ed. 1943).

If the 1969 amendment was not intended to apply to listings and assessments in that year, the result would be that for 1 year, and only 1 year, an ad valorem tax would be imposed. Had the tax been imposed in preceding years, the 1969 amendment would have effected an actual change in the taxable status of the dealers' inventories, and the presumption that such a change was intended to operate prospectively only would carry great weight. But in a unique situation such as this, where the tax has never been imposed in the past and will not be imposed in the future as long as this amendment remains in effect, it would be anomalous to ascribe to the legislature an intent that the tax should be collected in the year that it amended the act to approve the policy expressed in the exemption.

The rule that statutes are presumed to have a prospective rather than a retrospective operation applies where the statute disturbs vested rights or imposes a penalty. The statute involved in this case is not of that type. Furthermore, the general rule that statutes are to be given a prospective effect yields to a clear expression of legislative intent that the statute should operate retrospectively. *State v. Ladiges,* 63 Wn.2d 230, 386 P.2d 416 (1963). It is not necessary that a statute expressly state that it is intended to operate retrospectively if such an intention can be obtained by viewing its purpose and the method of its enactment. *Pape v. Department of Labor & Indus.,* 43 Wn.2d 736, 264 P.2d 241 (1953).

The only way that the emergency clause in chapter 225 can be rendered meaningful is to construe it as evidencing an intention that ad valorem taxes should not be levied upon inventories of travel trailers and mobile homes in 1969. Under RCW 84.40.040, the assessor is required to complete the duty of listing and placing valuations upon all property before the 31st of May. Since the act took effect on May 12th, it became effective before that duty was completed and in time to prevent the assessor's submission of lists of inventories to the county board of equalization as he is required to do before the first Monday of July under RCW 84.40.320.

The legislature had the power to cut off the tax liability at any stage. It is undoubtedly true that more lucid language could have been chosen to express the legislative intent that no tax be imposed. (*See, for example*, Laws of 1955, ch. 139, § 19.) While the most appropriate language was not used, we think the legislative purpose is apparent. It is the court's duty to give effect to the legislative intent, if it can be ascertained. *Anderson v. Seattle*, 78 Wn.2d 201, 471 P.2d 87 (1970).

■ We are convinced that it was the legislative intent, as expressed in chapter 225, read in the light of the legislative and administrative history of the subject matter, to prevent the further listing of inventories and to forbid the assessment of those already listed or the levying of any ad valorem taxes with respect to them.

Our conclusion requires that the judgment of the trial court be modified and that it be declared that Laws of 1969, Ex. Ses., ch. 225, was effective to extinguish any liability which may have arisen in the year 1969 for ad valorem taxes upon dealers' inventories of travel trailers and mobile homes. An injunction should be entered accordingly.

It is so ordered.

HAMILTON, C.J., FINLEY, HUNTER, HALE, NEILL, STAFFORD, and WRIGHT, JJ., concur.