[No. 45967. En Banc. July 26, 1979.]

NORMA L. MCCARVER, *as Administratrix*, ET AL, *Appellants*, v. MANSON PARK AND RECREATION DISTRICT, ET AL, *Respondents*.

*Bantz, Klobucher & Clemons,* by *A. O. Clemons, Jr.,* for appellants.

*Gary N. Jardine,* for respondents.

HICKS, J.—Plaintiffs McCarver and Peterson appeal the dismissal with prejudice in the Chelan County Superior Court of their action for the wrongful death of their daughter, Roberta Ann Peterson. The Court of Appeals, Division Three, certified the matter to this court for determination of the applicability of RCW 4.24.210, a landowner liability limiting statute. We accepted certification and we affirm the trial court.

Manson Park and Recreation District was organized in 1971. The parties stipulated it to be an unincorporated entity, although it is also referred to in the briefs as a municipal corporation. Manson Park operates a public swimming area, extending into Lake Chelan, which has a U–shaped dock and diving platform 10 to 12 feet in height. In addition to the swimming area, the park provides baseball diamonds and playfields. Although the record fails to clearly identify the owner of the parkland and water areas (there is some indication that ownership is in the United States Government), it is clear that Manson Park has the exclusive right of possession and control. In 1973, Manson Park initiated lifeguard services for the period of June through the Labor Day weekend. Apparently, the lifeguard was on duty 6 days a week.

July 16, 1973, the area was open to the public for swimming, although it was the lifeguard's day off. An unspecified number of teenagers in the swimming area of the park were engaged in a game of "rag tag". Roberta Ann Peterson, age 14, fell or was pushed from the diving tower during the activity. She struck her head on the dock sustaining injuries from which death resulted the same day.

July 15, 1976, Norma McCarver and Floyd Peterson, the deceased's mother and father, initiated this action against Manson Park and Recreation District for the wrongful

death of their minor child. The plaintiffs alleged that Manson Park was negligent in failing to provide adequate supervision at the swimming area, maintaining unsafe dangerous structures in the swimming area, and failing to establish and enforce reasonable rules and regulations to protect users.[1]

The matter was scheduled for trial in Chelan County Superior Court in January 1978. Manson Park moved for summary judgment based upon the statutory bar of RCW 4.24.200–.210, which limits liability of owners or others in possession of land and water areas for injuries to recreational users.

The trial court conducted a telephone conference hearing among the attorneys for the parties on January 5, 1978. The plaintiffs stipulated that: (1) Manson Park allows the public to use the area for outdoor recreation without charging a direct fee; (2) the cause of the injury to the deceased was unintentional. The trial court granted partial summary judgment (ruling the statute to be applicable), but it determined that a question of material fact remained as to whether Manson Park maintained "a known dangerous artificial latent condition for which warning signs have not been conspicuously posted". *See* RCW 4.24.210.

Trial was set for January 9, 1978. On that date, a second telephone conference hearing was held. Plaintiffs stipulated that *if* RCW 4.24.200–.210 applied, *then* the diving tower was not within the proviso, *i.e.,* it was not "a known dangerous . . . condition . . ." Defendant Manson Park's motion for dismissal with prejudice was granted with plaintiffs' acquiescence. The trial court filed its order of dis-

---

[1]Manson Park brought a third–party action praying for judgment over against Katherine Lewis and Dallas Singhurst for any judgment rendered in plaintiffs' favor. The complaint alleged that the reckless and negligent conduct of the third–party defendants caused the injuries to Roberta Ann Peterson.

missal on February 21, 1978.[2]

The sole issue before us is the applicability of RCW 4.24.200–.210. RCW 4.24.210 provides:

> *Any public or private landowners or others in lawful possession and control of* agricultural or forest lands or *water areas or channels* and rural lands adjacent to such areas or channels *who allow members of the public to use them for the purposes of outdoor recreation, which term includes* hunting, fishing, camping, picnicking, *swimming,* hiking, pleasure driving, the pleasure driving of all–terrain vehicles, snowmobiles, and other vehicles, boating, nature study, winter or water sports, viewing or enjoying historical, archaeological, scenic, or scientific sites, without charging a fee of any kind therefor, shall not be liable for unintentional injuries to such users: *Provided,* That nothing in this section shall prevent the liability of such a landowner or others in lawful possession and control for injuries sustained to users by reason of a known dangerous artificial latent condition for which warning signs have not been conspicuously posted: *Provided further,* That nothing in RCW 4.24.200 and 4.24-.210 limits or expands in any way the doctrine of attractive nuisance.

(First italics ours.)

The parties have stipulated that: (1) the situs of the accident is a "water area" and rural land adjacent thereto (as encompassed by RCW 4.24.210); (2) Manson Park allows the public to use the area for outdoor recreation "without charging a fee"; (3) the injuries incurred by Roberta Ann Peterson were "unintentional"; and (4) the diving tower did not constitute a "known dangerous artificial latent condition" for which conspicuous signs had not been posted. While not stipulated, there can be no dispute

---

[2]The court also dismissed with prejudice Manson Park's third–party indemnification action against Katherine Lewis and Dallas Singhurst. Manson Park stipulated at the January 9, 1978, hearing that its sole cause of action against the third–party defendants involved a claim of indemnification and if the court dismissed the underlying action, the park had no cause of action against Lewis and Singhurst.

that the deceased minor was engaged in an outdoor recreational activity delineated in the statute (swimming).

Based upon the stipulations entered, the first proviso of RCW 4.24.210 (warning of known dangerous artificial latent condition) is not applicable. The second proviso (attractive nuisance) is inapplicable in the instant case. The issue before the court is whether Manson Park is included in the class of protected landowners under the statute. If it is, the stipulated facts fall squarely within the terms of the statute, and the trial court's order must be sustained.

 The language of the statute expressly includes "public or private landowners or others in lawful possession and control". Appellants contend that Manson Park is not within the purview of the statute on three grounds: (1) statutory history; (2) statutory purpose; and (3) public policy.

## STATUTORY HISTORY

The statutes were first enacted in 1967. Laws of 1967, ch. 216. The act is said to be patterned after a model act proposed in 1965 by the Council of State Governments. *See* 24 Suggested State Legislation, *Public Recreation On Private Lands: Limitation On Liability,* 150–52 (1965). *See also* J. Barrett, *Good Sports And Bad Lands: The Application Of Washington's Recreational Use Statute Limiting Landowner Liability,* 53 Wash. L. Rev. 1 (1977). The impetus behind the model legislation was "to encourage availability of private lands by limiting the liability of owners." The council asserted that "in those instances where private owners are willing to make their land available to members of the general public without charge . . . every reasonable encouragement should be given". 24 Suggested State Legislation, *supra* at 150.

As originally enacted in 1967, the Washington act covered only "landowner[s]" of "agricultural or forest lands". The act listed certain activities as included within the term "outdoor recreation".

In 1969, the statutes were amended. Laws of 1969, 1st Ex. Sess., ch. 24. Tort liability immunity was extended to *"others* in lawful possession and control of agricultural or forest lands or *water areas or channels and rural lands adjacent to such areas or channels"*. (Italics ours.) RCW 4.24.210. The activities of swimming, boating and water sports were added to the list of outdoor recreational activities in RCW 4.24.210.

RCW 4.24.210 was amended in 1972. Laws of 1972, 1st Ex. Sess., ch. 153, § 17.[3] The words "public or private" were inserted before the word "landowners" in the first sentence of the statute and the driving of "snowmobiles" and "all–terrain vehicles" (ATV) were added to the list of outdoor recreational activities. The statute now encompasses "[a]ny public or private landowners or others in lawful possession and control of agricultural or forest lands or water areas or channels and rural lands adjacent to such areas or channels . . ." The amendments to RCW 4.24.210 were included in a detailed bill which substantially revised the administration of ATV law. The purpose of the act was set forth therein as follows:

> The purpose of this 1972 amendatory act is to increase the availability of trails and areas for all–terrain vehicles by granting authority to state and local governments to maintain a system of ATV trails and areas, and to fund the program to provide for such development. State lands should be used as fully as possible for all public recreation which is compatible with the income–producing requirements of the various trusts.

Laws of 1972, 1st Ex. Sess., ch. 153, § 1, p. 473; RCW 67.32.080.

The limited legislative history available concerning the addition of the words "public or private" does not greatly assist us in the present inquiry. As originally introduced,

---

[3]Amendments to RCW 4.24.210 by Laws of 1979, ch. 53, § 1, effective June 7, 1979, expand immunity to owners of any land, rural or urban, open to the public, without charge, for recreational use and add to a nonexclusive list of permitted recreational activities.

House Bill 29 included no amendment to RCW 4.24.210. However, when the bill was reported out of the Committee on Natural Resources and Ecology as Substitute House Bill 29 (42nd Legislature, 1972), section 17 contained the amendments to RCW 4.24.210.

There can be no dispute that Manson Park is a public landowner or one in possession and control of land and water areas. Appellants contend that limitations on the liability of *public* landowners under RCW 4.24.210 should be restricted to ATV and snowmobiling activities, because the purpose of the 1972 amendatory act is directed toward these activities. Where the language of a statute is clear and unambiguous, there is no room for judicial construction. *Snow's Mobile Homes, Inc. v. Morgan,* 80 Wn.2d 283, 288, 494 P.2d 216 (1972). RCW 4.24.210 draws no distinctions between public and private landowners, vis-a-vis the designated recreational activities. The placement of the 1972 amendatory language ("public or private") before the term "landowners" encompasses *all* outdoor recreational activities subsequently delineated. If the legislature intended the liability limitations to apply to public owners only as to incidents arising from the use of ATV and snowmobiles, it should have used more precise language to establish such an intent. *See Department of Fisheries v. Chelan County PUD 1,* 91 Wn.2d 378, 588 P.2d 1146 (1979). Clearly, the statute, as amended, includes public landowners and occupiers within the recreational use immunity from liability.

### STATUTORY PURPOSE

RCW 4.24.200 provides as follows:

The purpose of RCW 4.24.200 and 4.24.210 is to *encourage* owners or others in lawful possession and control of land and water areas or channels *to make them available to the public for recreational purposes* by limiting their liability toward persons entering thereon and toward persons who may be injured or otherwise damaged by the acts or omissions of persons entering thereon.

(Italics ours.)

The statutory purpose is not restricted to private landowners. Appellants argue that limitations on liability are not necessary "to encourage" public landowners, such as Manson Park, to devote public land to recreational use.

In 1972, when the legislature expressly included public landowners within the provisions of RCW 4.24.210, such entities were not otherwise immune from tort liability. *See* RCW 4.92.090; 4.96.010. Other courts have found similar recreational use liability limiting statutes applicable to public landowners in the *absence* of express statutory language covering publicly owned lands. *See, e.g., Anderson v. Brown Bros., Inc.,* 65 Mich. App. 409, 237 N.W.2d 528 (1976); *Blair v. United States,* 433 F. Supp. 217 (D. Nev. 1977). *Contra, Goodson v. Racine,* 61 Wis. 2d 554, 213 N.W.2d 16 (1973). In 1972, the Washington legislature made a legislative determination that inclusion of public, as well as private, landowners effectuated the statutory purpose of encouraging the availability of recreational land and water areas.

Finally, appellants assert that the statute was not intended to apply to land or water areas available exclusively for recreational purposes. They argue that in light of the statutory purpose, the scope of the act should be limited to land primarily used for other purposes, but with incidental recreational uses. Thus, they reason when Manson Park affirmatively invites the public to use the park exclusively for recreational purposes, it falls outside the scope of the liability limiting statute.

In the instant case, the parties stipulated that the accident occurred in a "water area." We decline to impose a limiting construction upon the statute differentiating land classifications based upon primary and secondary uses where the legislature did not. Arguments to achieve such a result should appropriately be addressed to the legislature.

PUBLIC POLICY

Finally, appellants assert that although public policy considerations may be persuasive to limit the liability of private landowners, the application of the statute to public parks defeats public policy. They assert that because public funds are expended, the public has a right to safe facilities, which application of the statute would deny. Such arguments are more appropriately directed to the legislature. Where, as here, the language of the statute is plain and not ambiguous, a departure from its clear meaning is not warranted. *Roza Irrigation Dist. v. State,* 80 Wn.2d 633, 497 P.2d 166 (1972).

Affirmed.

ROSELLINI, STAFFORD, WRIGHT, and WILLIAMS, JJ., concur.

DOLLIVER, J. (dissenting)—The question is whether RCW 4.24.200–.210 bars this action by plaintiffs. Contrary to the majority, I believe it is demonstrable both by the legislative history and by the language of the statute that the action may be brought.

It is not beyond the ambit of judicial notice to observe that, beginning in the early part of the 1960's, the United States and the state of Washington experienced a rapid explosion of all aspects of outdoor recreation. While there was a significant governmental response to the need for more recreational land (*see, e.g.,* Referendum Bill No. 11, approved November 3, 1964 (Laws of 1963, 1st Ex. Sess., ch. 12, p. 1352)), it was apparent that large acreages of private land could also add to the available outdoor recreational resources. To help meet this need, a model act, *"Public Recreation on Private Lands: Limitations on Liability"*, was promulgated by the Council of State Governments in 1965. 24 Suggested State Legislation, Council of State Governments 150–52 (1965). The introductory paragraphs to the act stated:

Where the owners of private land suitable for recreational use make it available on a business basis, there

may be little reason to treat such owners and the facilities they provide in any way different from that customary for operators of private enterprises. However, in those instances where private owners are willing to make their land available to members of the general public without charge, it is possible to argue that every reasonable encouragement should be given to them.

In something less than one–third of the states, legislation has been enacted limiting the liability of private owners who make their premises available for one or more public recreational uses. This is done on the theory that it is not reasonable to expect such owners to undergo the risks of liability for injury to persons and property attendant upon the use of their land by strangers from whom the accommodating owner receives no compensation or other favor in return.

The suggested act which follows is designed to encourage availability of private lands by limiting the liability of owners to situations in which they are compensated for the use of their property and to those in which injury results from malicious or willful acts of the owner. In the case of lands leased to states or their political subdivisions for recreational purposes, the legislation expressly provides that the owner will have no remaining liability to recreationists, except as such liability may be incorporated in an agreement, or unless the owner is compensated for the use of the land in addition to consideration for the lease.

24 Suggested State Legislation, *supra* at 150. *See also* J. Barrett, *Good Sports and Bad Lands: The Application of Washington's Recreational Use Statute Limiting Landowner Liability,* 53 Wash. L. Rev. 1 (1977).

In the original act, Laws of 1967, ch. 216, p. 1055, it is a clear inference from both section 1 (now RCW 4.24.200) and section 2 (now RCW 4.24.210, as amended) that recreational use was to be only a secondary or contingent use: *e.g.,* "The purpose of this act is to encourage owners of land to make available land and water areas to the public for recreational purposes . . ." (section 1), and "Any landowner who allows members of the public to use his agricultural or forest land for the purposes of outdoor recreation . . ." (section 2). The arrangement was clear: While the

primary use of the land would continue to be for agriculture or forestry, a secondary use, without fee, for recreation would be allowed by the landowner in exchange for a limitation of liability. The 1969 and 1972 amendments did nothing to contradict this arrangement, but simply extended the limitation of liability to other uses and areas as well as to public owners and possessors. Nothing in the legislative background or history of the act nor in its language leads to any other conclusion than that RCW 4.24-.200–.210 is intended to cover a situation where public recreational use is a *secondary* and not a *primary* use of the land or water. That is not the situation in this case.

Here the Manson Park and Recreation District was not simply "mak[ing] available land and water areas to the public for recreational purposes" or passively "allow[ing] members of the public to use" the area. It was actively and purposefully operating for the use of its citizens a recreational area which included a public swimming area with a public dock and a diving platform. It provided lifeguard services 6 days a week and had attempted to hire a lifeguard for the seventh day. Defendant is a taxing district and three–fourths of the moneys raised, by taxes, the year of the accident in this case, were allocated to provide a lifeguard for the swimming facility. The recreational use was primary and exclusive.

The majority invites the plaintiff to carry the primary/secondary use distinction to the legislature. There is no need for that. The legislative language and purpose is plain. The defendant should not be allowed to hide behind a statute which in neither intent nor content was meant to provide it immunity.

I dissent and would reverse the trial court and remand for trial.

UTTER, C.J., and BRACHTENBACH and HOROWITZ, JJ., concur with DOLLIVER, J.