[No. 7092–1. Division One. September 17, 1979.]

JOHN KUCHER, *Appellant,* v. THE COUNTY
OF PIERCE, ET AL, *Respondents.*

*Trethewey, Brink, Rossi, Todd & Clayton, Daniel Brink,* and *Robert O'Callahan,* for appellant.

*Davies, Pearson, Anderson, Seinfeld, Gadbow, Hayes & Johnson* and *Wayne J. Davies,* for respondents.

RINGOLD, J.—This is an action for personal injury sustained when the plaintiff John Kucher, while using a rope swing located in an area inside the City of Tacoma,[1] fell from the swing down a hillside, sustaining injuries. On the

---

[1] The area is referred to as Puget Park by plaintiff and as Puget Gulch by defendant. We will refer to the area as Puget Park for convenience. It is undenied that trails were maintained and that the area was open for public use.

basis of the landowner immunity statute[2] and the doctrine of assumption of risk, the trial court granted the defendants' motion for summary judgment and dismissed the action. This appeal followed.

While owned mostly by the Tacoma Metropolitan Park District (Park District) the land in a steeply sloped wooded area in northern Tacoma, known generally as Puget Park and administered by the Park District, comprises also parcels owned by the City of Tacoma and by Pierce County. The City, whose holdings are limited to some unimproved street right–of–ways, maintains those right–of–ways, but the County exercises no ownership rights, and generally conveys land it acquires in the area to the Park District. Aside from some trail improvements made by the City and a picnic area, Puget Park is largely unimproved, but is maintained and inspected by the Park District.

Whenever it learns of them the Park District as a matter of policy removes rope swings because of their hazardous nature. Kucher fell from such a swing attached to the limb of a tree in the gulch area, a portion of the park owned by

---

[2]RCW 4.24.200 states:

"The purpose of RCW 4.24.200 and 4.24.210 is to encourage owners or others in lawful possession and control of land and water areas or channels to make them available to the public for recreational purposes by limiting their liability toward persons entering thereon and toward persons who may be injured or otherwise damaged by the acts or omissions of persons entering thereon. [1969 ex.s. c 24 § 1; 1967 c 216 § 1.]"

RCW 4.24.210 states:

"Any public or private landowners or others in lawful possession and control of agricultural or forest lands or water areas or channels and rural lands adjacent to such areas or channels who allow members of the public to use them for the purposes of outdoor recreation, which term includes hunting, fishing, camping, picnicking, swimming, hiking, pleasure driving, the pleasure driving of all–terrain vehicles, snowmobiles, and other vehicles, boating, nature study, winter or water sports, viewing or enjoying historical, archaeological, scenic, or scientific sites, without charging a fee of any kind therefor, shall not be liable for unintentional injuries to such users: *Provided,* That nothing in this section shall prevent the liability of such a landowner or others in lawful possession and control for injuries sustained to users by reason of a known dangerous artificial latent condition for which warning signs have not been conspicuously posted: *Provided further,* That nothing in RCW 4.24.200 and 4.24.210 limits or expands in any way the doctrine of attractive nuisance. [1972 ex.s. c 153 § 17; 1969 ex.s. c 24 § 2; 1967 c 216 § 2.]"

the County. A stick about 2 feet long and 2 inches in diameter tied onto the end of the rope to form a seat broke under Kucher's weight. Lacking the strength to hold himself onto the rope, he slipped off the end into the gulch and sustained a broken back, rendering him a paraplegic.

Two issues are presented for our consideration:

1. Is the landowner immunity statute, RCW 4.24.210 (The Act) applicable so as to shield the defendants from possible liability for Kucher's injuries?

2. Does the doctrine of assumption of risk in any event support the judgment of dismissal?

We answer both questions in the negative and reverse.

### IMMUNITY STATUTE

■ The general rule to follow has been well stated in *Strenge v. Clarke*, 89 Wn.2d 23, 29, 569 P.2d 60 (1977):

[T]he fundamental object of statutory interpretation is to ascertain and give effect to the intent of the legislature. In so doing, first consideration is given to the context and subject matter of the statute itself. Moreover, legislative intent is to be ascertained from the statutory text as a whole, interpreted in terms of the general object and purpose of the legislation.

Citing a definition of the word "forest" in a different statute, Kucher urges that the term should not be read so expansively as to include the area in Puget Park but should be construed to refer only to rural forestlands. The defendants rejoin that Puget Park is certainly a forest in the commonly understood meaning of the word "forest." To be decided here, then, is the meaning of the word "forest" as used in the landowner immunity statute, a question of statutory construction and legislative intent.

■ The proper construction of a word in a statute can be derived from an interpretation given that word in other statutes, provided other statutes are in pari materia with the statute being construed. *Whitehead v. Department of Social & Health Servs.*, 92 Wn.2d 265, 267, 595 P.2d 926 (1979). The statutory definition of "forest land" upon which Kucher relies appears in RCW 84.33.100, a statute

dealing with taxation of property. Taxation of property, however, is not in pari materia with tort liability of land-owners; the term "forest land" might mean something quite different in a taxation statute from its meaning in a tort context. Thus, the statutes are not in pari materia and the definition of "forest lands" at RCW 84.33.100 is of little moment in resolving the meaning of the term in RCW 4.24.210.

The listing in the act of kinds of land to which the immunity extends can only be understood as a limitation upon the scope of the coverage of the act. When the statute was being considered in the Senate the following exchange took place:[3]

Senator Woodall:
"Mr. President, would Senator Dore yield to a question now: 'Senator Dore, we don't normally contemplate renting apartment houses for recreational purposes, do we?'

Senator Dore:
"You don't represent my district!"

Debate ensued.

Senator Stender:
"Mr. President, would Senator Uhlman yield to a question:
"Senator Uhlman, I notice that the amendment from the Senate Judiciary Committee strikes out most of the House bill. When I read the House bill it seems to be pretty broad in its coverage and I was wondering what purpose was there in striking out the House bill and then putting in this short amendment?"

---

[3] "Legislative history of laws may properly be considered as an aid to ascertaining the legislative intent . . . when the statute is ambiguous, or its meaning doubtful and obscure." *Shelton Hotel Co. v. Bates*, 4 Wn.2d 498, 508, 104 P.2d 478 (1940).

"While statements and opinions of individual legislators generally are not considered by the courts in construing legislation, statements made in answer to questions on the floor by the chairman of the committee in charge of the bill may be taken as the opinion of the committee as to the meaning of the bill." *Snow's Mobile Homes, Inc. v. Morgan*, 80 Wn.2d 283, 291, 494 P.2d 216 (1972). 2A C. Sands, *Sutherland's Statutes and Statutory Construction* § 48.14 (4th ed. 1973).

Senator Uhlman:

"Just precisely that: The House bill changes the whole tort concept as Senator Dore pointed out, and the Senate amendment limits it to just what the original proponents of the bill intended and that was just to cover agricultural and forest land. . . ."

Senate Journal, Fortieth Legislature, at 875–76 (1967). From this interchange it is fair to deduce that the words "agricultural and forest" were meant to limit the scope of coverage of the act, and that the legislature intended that there be room left for the application of the common law of premises liability as to those kinds of land, such as urban residential properties, not covered by the act. Additionally, this interchange demonstrates legislative awareness that the act impinges upon the common law; the inclusion of the words "agricultural and forest" was intended to limit that impingement. Of course, any statute in derogation of the common law must be strictly construed. *Marble v. Clein,* 55 Wn.2d 315, 318, 347 P.2d 830 (1959); *see also Boileau v. De Cecco,* 125 N.J. Super. 263, 310 A.2d 497 (1973).

██ Starting from the premise that the scope of the immunity must be narrow, we then turn to an examination of the meaning of the words "agricultural and forest" as they appear in the act. The rule of noscitur a sociis teaches that the meaning of a word in a statute may be determined by reference to its association with other words or phrases. 2A C. Sands, *Sutherland's Statutes and Statutory Construction* § 47.16 (4th ed. 1973); *cf. Lenhoff v. Birch Bay Real Estate, Inc.,* 22 Wn. App. 70, 79, 587 P.2d 1087 (1978). The act provides that the immunity extend to "agricultural and forest lands . . . and rural lands adjacent to such areas. . . ." The use of the word "rural" in describing land adjacent to "agricultural or forest" lands indicates the legislature conceived such agricultural and forest lands covered by the statute to be themselves rural in character, and that the term "rural" need not have been included before the phrase "agricultural and forest" because such terms themselves refer to lands of a rural character. Also, the use

of the word "agricultural," a word of distinctively rural connotation, in a parallel with the word "forest" further corroborates the notion that the word "forest" refers to rural lands.

■ Even more persuasive of the legislature's concept of the meaning of the words "agricultural or forest" in the act is the amendment to the act made by the 1979 legislature. The following excerpt indicates material changes enacted:

> Any public or private landowners or others in lawful possession and control of ((agricultural or forest)) any lands whether rural or urban, or water areas or channels and ((rural)) lands adjacent to such areas or channels, who allow members of the public to use them for the purposes of outdoor recreation . . . shall not be liable for unintentional injuries to such users: . . .

Laws of 1979, ch. 53, § 1, p. 236. A change in legislative intent is presumed when a material change is made in a statute. *Strunk v. State Farm Mut. Auto. Ins. Co.*, 90 Wn.2d 210, 213–14, 580 P.2d 622 (1978). The legislature struck out the words "agricultural or forest" and substituted the word "any," included the phrase "whether rural or urban," and struck out the word "rural." The legislature must have understood the statute as worded before the amendment *not* to cover urban areas, but only rural forest and agricultural lands. Had the legislature not so read the statute, the 1979 amendment would have been unnecessary to broaden the scope of the immunity.[4]

The Oregon Supreme Court was confronted with the issue requiring construction of the word "agricultural" in Oregon's similar statute, ORS 105.655. In *Tijerina v. Cornelius Christian Church*, 273 Ore. 58, 539 P.2d 634 (1975), the Oregon Supreme Court had considered whether a

---

[4]The House Judiciary Committee Bill Report summarizes the bill, House Bill No. 50, to "extend the immunity to urban as well as rural landowners."

The "*Summary of Enacted Laws of Interest to Bench and Bar*," Senate Judiciary Committee, Forty–sixth Legislature (1979), at page 16, states: "A landowner is currently immune from liability for unintentional injury to persons permitted to use rural property for outdoor recreational purposes. This immunity protection now applies to urban lands as well."

church lot on which plaintiff broke his leg while playing ball was "agricultural land" within the coverage of the immunity statute. The court said:

> [T]he legislature intended by the restrictive definition of land in ORS 105.655(2) to limit its application to landholdings which tended to have recreational value but not be susceptible to adequate policing or correction of dangerous conditions. The restrictive definition was introduced by amendment to a proposed grant of immunity to owners of all land opened to recreation with the express purpose of avoiding a grant of immunity to all recreational land. Thus "agricultural land" must be interpreted narrowly in light of the legislative purpose.

(Footnote omitted.) *Tijerina v. Cornelius Christian Church, supra* at 64.

A scholarly commentator, expanding upon this rationale for determining the scope of applicability of the immunity statute, suggests three factors to be brought to bear on this question. Those are (1) the amount of land owned by the defendant, (2) the arrangement of the land and its improvements, and (3) the relative proximity of the land to a population center. The greater the amount of land, the greater the owner's burden in maintaining safe conditions, and the greater the propriety of the immunity. Where the land is improved and frequently policed there should be no immunity, whereas where it is unimproved and seldom inspected, immunity would be appropriate. The closer the land to an urban area the lesser the need for immunity. J.C. Barrett, *Good Sports and Bad Lands: The Application of Washington's Recreational Use Statute Limiting Landowner Liability,* 53 Wash. L. Rev. 1, 22–25 (1977).

The land in this case is improved, routinely inspected, and is inside the City of Tacoma. The susceptibility of the area in Puget Park to adequate policing and removal of dangerous conditions, as tested by the Barrett factors, compels the conclusion that the word "forest" as used in the statute does not include Puget Park. We determine that the purposes of the statute are not served by extending tort immunity to the defendants here.

For these reasons we interpret the word "forest" as not intended to include Puget Park.

ASSUMPTION OF RISK

In *Lyons v. Redding Constr. Co.*, 83 Wn.2d 86, 96, 515 P.2d 821 (1973), the Supreme Court said "the effect of the comparative negligence standard shall be to completely abrogate the assumption of risk doctrine as known and applied heretofore." This does not mean, however, that the plaintiff's own conduct need not be considered by the trier of fact. RCW 4.22.010. Whether the plaintiff observed reasonable care is an issue of material fact to be determined at trial.

In view of our disposition of the other issues we do not consider the question of the applicability of the residual duty proviso, or the constitutionality of the act.

Reversed and remanded for trial.

WILLIAMS and ANDERSEN, JJ., concur.

Reconsideration denied December 19, 1979.