[No. 17221-2-I. Division One. August 31, 1987.]

CY PARTRIDGE, *Appellant,* v. THE CITY OF SEATTLE,
*Respondent.*

*Stephen P. Schnautz* and *Bangs, Castle, Schnautz & Hilfer, P.S.,* for appellant.

*Douglas N. Jewett, City Attorney,* and *J. Roger Nowell, Assistant,* for respondent.

GROSSE, J.—Cy Partridge appeals an order granting summary judgment in favor of the City of Seattle, and an order denying a motion for reconsideration. We affirm.

In 1980, Partridge was permanently paralyzed as a result of a diving accident which occurred in a location just outside the public swimming area at Matthews Beach Park, a city park. Partridge filed suit against the City of Seattle to recover damages for his injuries. The City moved for summary judgment arguing that RCW 4.24.210[1] barred Partridge's claim.

First, Partridge contends that RCW 4.24.210 should not apply to immunize the City where the City has acted affirmatively to improve the beach and adjoining lake area with public funds and invites, rather than allows, recreational use. Partridge essentially reraises the issue addressed in *McCarver v. Manson Park & Rec. Dist.*, 92 Wn.2d 370, 597 P.2d 1362 (1979), and would have us narrowly construe the statute to immunize only those landowners, public or private, who merely allow recreational use of unimproved land or water areas. This we cannot do. *McCarver v. Manson Park & Rec. Dist., supra,* and the more recent *Riksem v. Seattle,* 47 Wn. App. 506, 511, 736 P.2d 275 (1987), are dispositive.

*McCarver* involved an accident which occurred at a beach (Manson Park) on Lake Chelan open to the public for swimming. The swimming area had a U–shaped dock and diving platform. Manson Park also supplied lifeguard services 6 days per week. The parties stipulated: (1) that the area was a "water area" encompassed by RCW 4.24.210; (2) Manson Park allowed the public to use the area for outdoor recreation "without charging a fee"; (3) the plaintiff's injuries were unintentional; and (4) the diving tower

---

[1]RCW 4.24.210 provides in part:

"Any public or private landowners or others in lawful possession and control of any lands whether rural or urban, or water areas or channels and lands adjacent to such areas or channels, who allow members of the public to use them for the purposes of outdoor recreation, which term includes . . . swimming . . . without charging a fee of any kind therefor, shall not be liable for unintentional injuries to such users: . . . *Provided further,* That nothing in this section shall prevent the liability of such a landowner or others in lawful possession and control for injuries sustained to users by reason of a known dangerous artificial latent condition for which warning signs have not been conspicuously posted . . ."

did not constitute a "known dangerous artificial latent condition." Also, the court found undisputed that the plaintiff was engaged in recreational activity when the accident occurred. The McCarvers argued that the 1972 amendment to RCW 4.24.210, which redefined the class of immunized landowners to include public as well as private landowners, should be construed to limit liability of public landowners to only the purposes set forth in the amendatory statute, all terrain vehicle (ATV) and snowmobiling activities, not other recreational activities. The Supreme Court disposed of that argument as follows:

> Where the language of a statute is clear and unambiguous, there is no room for judicial construction. *Snow's Mobile Homes, Inc. v. Morgan,* 80 Wn.2d 283, 288, 494 P.2d 216 (1972). RCW 4.24.210 draws no distinctions between public and private landowners, vis–a–vis the designated recreational activities. The placement of the 1972 amendatory language ("public or private") before the term "landowners" encompasses *all* outdoor recreational activities subsequently delineated. If the legislature intended the liability limitations to apply to public owners only as to incidents arising from the use of ATV and snowmobiles, it should have used more precise language to establish such an intent. *See Department of Fisheries v. Chelan County PUD 1,* 91 Wn.2d 378, 588 P.2d 1146 (1979). Clearly, the statute, as amended, includes public landowners and occupiers within the recreational use immunity from liability.

*McCarver,* at 376. The McCarvers further argued that the statute should not apply to land or water areas available *exclusively* for recreational purposes, but rather to land primarily used for other purposes, but with incidental recreational uses. In response, the court stated:

> Finally, appellants assert that the statute was not intended to apply to land or water areas available exclusively for recreational purposes. They argue that in light of the statutory purpose, the scope of the act should be limited to land primarily used for other purposes, but with incidental recreational uses. Thus, they reason when Manson Park affirmatively invites the public to use the park exclusively for recreational purposes, it falls outside

the scope of the liability limiting statute.

In the instant case, the parties stipulated that the accident occurred in a "water area." We decline to impose a limiting construction upon the statute differentiating land classifications based upon primary and secondary uses where the legislature did not. Arguments to achieve such a result should appropriately be addressed to the legislature.

*McCarver,* at 377.

Partridge attempts to distinguish the case at bar from *McCarver* first by the fact that *McCarver* was decided upon stipulated facts whereas here the facts are not agreed to; and, second, Manson Park "allowed" the public to use the beach area whereas here, the City did more than "allow" public use, it undertook action to improve the land with public funds and "invited" public use. We find these distinctions meritless. Whether the facts are agreed to or found to be undisputed as in a summary judgment is irrelevant. Further, *Riksem v. Seattle, supra,* held that RCW 4.24.210 barred a suit against the City of Seattle for injuries sustained in a bicycle–jogger accident which occurred on the Burke–Gilman Trail, a former railroad track which was converted (improved) by the City to an asphalt trail for walkers, joggers, and bicyclists. *Riksem* makes clear that the statute applies to any landowner whose land is made available for public use. The City is immune from tort liability for Partridge's injuries unless the City knew of a dangerous artificial latent condition.

On the issue of knowledge, Partridge argues that summary judgment was improper because the pleadings and affidavits created an issue of fact as to whether the City had knowledge of the pilings beneath the water at the time of the accident in 1980. Because RCW 4.24 does not define knowledge, we must decide whether RCW 4.24 210 requires actual or constructive knowledge in its use of the term "known dangerous artificial latent condition".

 In construing the language of a statute, words are to be given their plain and ordinary meaning unless a contrary intent appears. *Hewson Constr., Inc. v. Reintree*

*Corp.,* 101 Wn.2d 819, 826, 685 P.2d 1062 (1984). Further, the construction of a statute is to be harmonious with its stated purpose. *Service Employees Int'l, Local 6 v. Superintendent of Pub. Instruction,* 104 Wn.2d 344, 705 P.2d 776 (1985). *Webster's Third New International Dictionary* 1252 (1981) defines "know" as to have acquaintance or familiarity with through experience or acquisition of information; to have cognizance, consciousness, or awareness of something. The language of the statute itself suggests that actual knowledge is required. Moreover, at common law, a landowner owed a recreational user/public invitee a duty to inspect, discover, and warn of or remove dangerous conditions on his land. That is, dangerous conditions about which the landowner knew or *should have known.* Construing the statute to include constructive knowledge would be contrary to the clearly expressed purpose of RCW 4.24 limiting the liability of landowners. We agree with the conclusion of the Oregon Supreme Court in *Bilbao v. Pacific Power & Light Co.,* 257 Or. 360, 479 P.2d 226 (1971), and that of the Ninth Circuit in *Morgan v. United States,* 709 F.2d 580 (9th Cir. 1983), that RCW 4.24.210 requires actual, not constructive, knowledge on the part of the landowner.

Partridge contends that the evidence he produced demonstrated that the City had actual knowledge of the presence of pilings beneath the water in July of 1980.[2] The City submitted affidavits, answers to interrogatories, and a memorandum in support of its motion. The affidavits of the senior real property agent for the Department of Parks and Recreation and of the owner of the company which did the

---

[2]A summary judgment motion should be granted only if the pleadings, affidavits, depositions, and admissions on file demonstrate "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). Since knowledge is generally a question of fact,

> [s]ummary judgment is improper where, even though evidentiary facts are not in dispute, different inferences may be drawn therefrom as to ultimate facts, such as intent or *knowledge.*

(Italics ours.) *In re Estates of Wahl,* 31 Wn. App. 815, 817, 644 P.2d 1215 (1982), *aff'd,* 99 Wn.2d 828, 664 P.2d 1250 (1983).

water demolition work at Matthews Beach Park described in a 1971 cleanup project which included the removal of underwater protrusions. The owner stated that his company removed every piling or underwater protrusion present at that time. Answers to interrogatories indicated that the City did not have knowledge that there were any manmade objects present in the water in 1980. However, in 1981, after Partridge was injured, submerged pilings were removed from the lake bed south of the swimming area—the area where the accident occurred. Partridge's responsive affidavits disclosed the following: The presence of pilings in 1980 was shown by Partridge's own affidavit in which he described his accident and by the affidavit of his friend, Ed Pirecki, with whom he was swimming on the day of the accident. Pirecki stated that on the day of the accident there were pilings in the water near the area where they were swimming. He stated that the pilings were lined up in two parallel rows and were not visible from the beach. The presence of pilings in 1982 was shown by the affidavits of Partridge and his girl friend, Ms. Guthrie, who both returned to the accident scene in the spring of 1982. Guthrie waded into the water and located pilings protruding from the lake bottom to a height of approximately 8 to 10 inches. In July of 1982, Partridge and Guthrie again returned to the scene but this time Guthrie could not find any pilings. Pirecki corroborated that in late spring of 1982 he also noticed that the pilings had been removed. Exhibits to an affidavit of Partridge's counsel showed that at the time of the 1971 cleanup the construction company was authorized to cut pilings to a level not less than 2 feet below the lake bed as an alternative to removing the pilings. A memo drafted in 1971 noted the presence of more previously unknown piers made visible by the action of the tug and barge loosening and removing other pilings.

Construing all of this evidence in a light most favorable to Partridge, it, at best, allows an inference that the City should have known that pilings could be present south of the designated beach area at Matthews Beach Park. But,

"should have known" and "could be present" are not sufficient. To repeat, for liability to attach, the City must have had actual knowledge that more probably than not pilings were present beneath the water at the time of Partridge's accident. There was no evidence of prior complaints or of notice to the City of pilings beneath the water from which we could reasonably infer actual knowledge. That three pilings were removed in 1981 does not necessarily lead to the inference that the City had actual knowledge that pilings were present in 1980. The removal action could have come about as a result of Partridge's accident. Further, it is not clear from the evidence that the pilings removed in 1981 were removed from the actual location where Partridge was injured. Consequently, the summary judgment was proper.[3]

RINGOLD, A.C.J., and PEKELIS, J., concur.

---

[3]Because we find insufficient evidence that the City had actual knowledge of pilings beneath the water, we need not reach Partridge's contention that the City's failure to post signs warning of such a "known dangerous artificial latent condition" constituted wanton and reckless misconduct, not protected by the statute.