[No. 11047–4–II.   Division Two.   February 15, 1989.]

LOIS B. BERNSTEIN, *Individually and as Personal Representative, Appellant,* v. THE STATE OF WASHINGTON, *Respondent.*

457

*James A. Lanza* and *Joseph J. Lanza,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Rene D. Tomisser, Assistant,* for respondent.

REED, J.—Lois Bernstein appeals a summary judgment that dismissed her wrongful death action against the State of Washington in connection with the drowning death of her son, Rudy Nash, at Dash Point State Park. Bernstein challenges the trial court's reliance on *McCarver v. Manson Park & Rec. Dist.,* 92 Wn.2d 370, 597 P.2d 1362 (1979), which held that the Washington recreational land use immunity act, RCW 4.24.200 *et seq.,* grants limited immunity to a public entity whose primary purpose is to provide recreational facilities such as a park to the public. The plaintiff urges this court to distinguish *McCarver* and apply the reasoning of *Kucher v. Pierce Cy.,* 24 Wn. App. 281, 600 P.2d 683 (1979). We decline to do so. We find no meaningful distinctions between this case and *McCarver,* and therefore affirm the order of the trial court.

On the afternoon of July 27, 1982, 19–year–old Rudy Nash visited Dash Point State Park with friends and family. He drowned while swimming with others off the beach.

Dash Point State Park is located on Puget Sound, 6 miles north of Tacoma and approximately 20 miles south of Seattle. The park consists of 400 acres, acquired by the State in four separate purchases beginning in 1958. Although much of the vast area of the park is unimproved save for hiking trails, portions of the park are improved, with parking facilities, picnic and play areas, and fully equipped campsites. Three employees are permanently stationed at the park site, and more are hired seasonally. No fee is charged for the use of the park.

Although the beach was not a "designated swim area" and no lifeguards were assigned to the beach, there were paved parking areas that gave access to the beach through a tunnel designed for that purpose, and picnic areas with tables on the beach. There were signs at the entrance and along a trail directing people to the beach, and, apparently, a swimmers' shower facility. However, there were no signs warning swimmers of any dangers posed by the currents and tides in the waters off Dash Point State Park.

Lois Bernstein brought this wrongful death action against the State in her individual capacity, and as personal representative of the estate of Rudy Nash. She alleges that the State was negligent by failing to warn Nash of the dangers posed by the tides and currents, and that this failure to warn was a proximate cause of his death. In response to the suit, the State brought a motion for summary judgment, claiming immunity under RCW 4.24.200 *et seq.*[1]

---

[1]RCW 4.24.200 states that the purpose of the statute is: "to encourage owners or others in lawful possession and control of land and water areas or channels to make them available to the public for recreational purposes by limiting their liability toward persons entering thereon . . .". RCW 4.24.210 provides, in relevant part:

"Any public or private landowners or others in lawful possession and control of any lands whether rural or urban, or water areas or channels and lands adjacent to such areas or channels, who allow members of the public to use them for the purposes of outdoor recreation, which term includes . . . swimming . . . without

That motion was denied initially, but was granted after reconsideration. Bernstein appeals from that order.

Plaintiff first contends that the State does not fall within the class of landowners the Legislature intended to protect because Dash Point State Park is a publicly owned, tax supported park that was open and available for public use prior to the enactment of the recreational land use immunity act.[2] She argues that the stated purpose of the act is to provide an incentive to reluctant landowners to open land that otherwise would be unavailable to the public, and that to extend the immunity provided by the statute would not serve that purpose in this case. We disagree.

■ We see no reason to limit the statute's application to only those landowners who "open" land after the statute was enacted. *See Riksem v. Seattle,* 47 Wn. App. 506, 510–11, 736 P.2d 275, *review denied,* 108 Wn.2d 1026 (1987). RCW 4.24.200 refers to landowners who make their land "available" to the public. A landowner, whether public or private, has a continuing right to close his land to the public regardless of when the land was originally "opened" or for what purpose. It follows that the statutory purpose is served by extending the act's application to those whose land was already open to the public when the statute was enacted as a continuing incentive to keep the land open.

Indeed, failure to so extend the act's application would contravene its stated purpose. Were it not for the limited liability provided, the State might close the beach at Dash

charging a fee of any kind therefor, shall not be liable for unintentional injuries to such users: . . . *Provided further,* That nothing in this section shall prevent the liability of such a landowner or others in lawful possession and control for injuries sustained to users by reason of a known dangerous artificial latent condition for which warning signs have not been conspicuously posted . . ."

[2]The plaintiff relies upon this fact to distinguish this case from *McCarver v. Manson Park & Rec. Dist., supra. McCarver* also involved a wrongful death claim arising from a swimming accident at a public park exclusively maintained for recreational purposes. However, Manson Park was developed *after* the enactment of the recreational land use immunity act. Thus, plaintiff contends that the issue presented here was not raised in *McCarver,* because the park in that case could be said to have been developed *because* of the immunity provided by the act.

Point State Park, which is precisely the type of result the act seeks to prevent. *See Jones v. United States,* 693 F.2d 1299, 1302–03 (9th Cir. 1982).

■ Plaintiff resorts to legislative history to urge ambiguity where none exists. Where the language of a statute is clear and unambiguous, there is no room for judicial construction. *McCarver,* 92 Wn.2d at 376. Resort to legislative history in such circumstances is thus inappropriate. *See Shelton Hotel Co. v. Bates,* 4 Wn.2d 498, 506–07, 104 P.2d 478 (1940). While it is true that the fundamental object of statutory interpretation is to ascertain and give effect to the legislative intent, that intent should not be confused with legislative history. Legislative history is an appropriate tool for ascertaining legislative intent, but it is well settled that when a statute's meaning is apparent from the language used, there is no reason to look beyond its wording.

For this reason, we must also reject the plaintiff's assertion that the reasoning set forth in *Kucher v. Pierce Cy., supra,* is applicable in this case. In *Kucher,* the plaintiff was injured while using a rope swing located in a largely unimproved, but routinely maintained and inspected park in northern Tacoma owned by Pierce County. Because the version of RCW 4.24.210 in effect at the time of Kucher's injuries provided limited immunity to "public or private landowners or others in lawful possession and control of *agricultural or forest* lands or water areas or channels . . .", the question before the court was whether an urban park that has been improved and is routinely inspected should be considered "forest" land within the purview of the statute. The court held that it should not, relying on certain factors that bear on the propriety of immunity.[3]

---

[3]Those factors are (a) the amount of land owned by the defendant, (b) the susceptibility of the land to adequate policing and removal of dangerous conditions, (c) the arrangement of the land and its improvements, and (d) the relative proximity of the land to a population center. *Kucher,* 24 Wn. App. at 288 (citing *Tijerina v. Cornelius Christian Church,* 273 Or. 58, 64, 539 P.2d 634 (1975); Barrett, *Good Sports and Bad Lands: The Application of Washington's Recreational Use Statute Limiting Landowner Liability,* 53 Wash. L. Rev. 1, 22–25 (1977)).

The plaintiff here would have this court resort to the factors cited in *Kucher* to prevent application of the statute to bar her recovery.

However, the statute was amended in 1979: "agricultural or forest" was stricken as a modifier of "lands" and the statute was changed to read "any lands whether rural or urban . . ." Laws of 1979, ch. 53, § 1, p. 236. It was this amended statute that was under consideration in *McCarver*. The *McCarver* court found no reason to discuss the factors considered in *Kucher,* because it found the statute unambiguous.[4]

Bernstein next contends that her son was a "public invitee" and that the act was never intended to apply to landowners who "invite" the public onto their land, as opposed to those who merely "allow" the public to use their land. Assuming, without deciding, that Rudy Nash was a "public invitee" as that term is defined in *McKinnon v. Washington Fed. Sav. & Loan Ass'n,* 68 Wn.2d 644, 414 P.2d 773 (1966), his common law status is irrelevant given the unambiguous changes made by the act.[5]

█ The Ninth Circuit Court of Appeals has recognized that in Washington a recreational entrant would be characterized as a "public invitee" at common law, but that the statute was enacted against the background of the common law with the idea of changing the status of recreational entrants.[6] *Morgan v. United States,* 709 F.2d 580, 583 (9th Cir. 1983), *quoted with approval in Preston v. Pierce Cy.,*

---

[4]The *Kucher* court's reliance on the factors cited was necessary only because the court specifically found the word "forest" as used in the statute to be ambiguous. Because the statute is in derogation of common law, the court found it necessary to strictly construe the statute, and resorted to those factors only in an effort to do so.

[5]*See also Partridge v. Seattle,* 49 Wn. App. 211, 212, 741 P.2d 1039 (1987), which rejected the "invitation" versus "allow" distinction, saying that the argument only "reraises the issue addressed in *McCarver* . . ."

[6]In fact, in the first case decided under RCW 4.24.210, *Bilbao v. Pacific Power & Light Co.,* 257 Or. 360, 479 P.2d 226, 227 (1971), the plaintiff urged that the statute was adopted by the Legislature *in reaction* to the decision of the court in

48 Wn. App. 887, 890 n.2, 741 P.2d 71 (1987). Thus, Nash's status under common law principles is irrelevant because both his status as a "recreational user" and the defendant's duty to such users are defined by the statute. *Bilbao v. Pacific Power & Light Co.*, 257 Or. 360, 479 P.2d 226, 227 (1971); *Morgan,* 709 F.2d at 583.

▮ Finally, we need not address plaintiff's argument that the changes to the common law brought about by the act and the amendments thereto were not adequately expressed in the title of the enacting legislation, in violation of article 2, section 19 of the Washington State Constitution. Plaintiff failed to raise this issue before the trial court. In civil cases, constitutional issues not presented to or considered by the trial court will not be considered on appeal unless the issue involves the jurisdiction of the court. *Robinson v. Peterson,* 87 Wn.2d 665, 675, 555 P.2d 1348 (1976); *Department of Labor & Indus. v. Wendt,* 47 Wn. App. 427, 431, 735 P.2d 1334, *review denied,* 108 Wn.2d 1034 (1987).

Affirmed.

PETRICH, A.C.J., and WORSWICK, J., concur.

Review denied at 112 Wn.2d 1024 (1989).

---

*McKinnon v. Washington Fed. Sav. & Loan Ass'n, supra. See also* Note, *Land Occupier Liability in Washington,* 43 Wash. L. Rev. 867, 875 n.59 (1968).