IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SARAH ELLEN KEENAN and DAVID E. KEENAN, wife and husband, | ) ) ) | No. 39420-4-III |
| Appellants, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| CITY OF SPOKANE VALLEY, a municipal corporation, | ) ) ) ) | |
| Respondent. | ) | |

PENNELL, J. — After being injured while riding her bicycle on the city of Spokane Valley's Appleway Trail, Sarah Keenan and her husband sued for damages. The City moved for summary judgment, asserting application of Washington's recreational immunity statute. The trial court granted the City's motion and dismissed the case.

We affirm in part and reverse in part. We agree with the trial court that the Appleway Trail generally qualifies for protection under Washington's recreational immunity statute, RCW 4.24.200-.210. It is undisputed the City affirmatively held the trail open to the public for recreational purposes.[1] Nothing further is required for property to qualify as recreational.

---

[1] As discussed below, there are other elements of the recreational immunity statute, but those are not at issue in this case.

While the Appleway Trail qualifies as recreational, summary judgment dismissal is nevertheless inappropriate. Immunity under the recreational use statute is not absolute. A landowner may still be held liable for dangerous latent defects. Here there are questions of material fact as to whether the condition that caused Ms. Keenan's fall was latent. Given this record, the Keenans are entitled to trial on this issue.

FACTS

On the morning of June 26, 2020, Sarah Keenan was riding her bicycle on a newly constructed portion of the City's Appleway Trail when she encountered a City truck, operated by Peter Fisch, parked in the middle of the trail.

The City had opened this extension of the Appleway Trail to the public earlier that week. One of Mr. Fisch's jobs that day involved clearing up leftover construction debris. Mr. Fisch parked his truck on the trail with its lights on, and orange markers were placed around it, while he was out collecting debris. Ms. Keenan slowed as she approached the truck to let two pedestrians pass. As Ms. Keenan moved forward to also pass the truck she felt a jolt and then crashed, suffering a broken leg and injured knee. While on the ground, Ms. Keenan saw a large plastic lid lying on the trail and other materials presumably left during construction. She recalls someone telling her she must have hit some black tubing

left on the trail. There is no evidence indicating Ms. Keenan saw any of the debris before her fall.

Mr. Fisch did not witness Ms. Keenan's fall. But he confirmed there was debris on the trail, including "two 2x4's, a 10-gallon size container (approximately) and its lid, as well as an eight-foot-long piece of black tubing." Clerk's Papers at 42-43. The parties agree there were other people using the trail at the time of the incident and there was no signage indicating the trail was closed or warning that there were any hazardous conditions. *Id.* at 7, 12. Immediately after this incident, Mr. Fisch took photos documenting the condition of the trail.

The Appleway Trail is a nonmotorized, multiuse trail running through the City. The trail was built and maintained through an interlocal agreement between Spokane County and the City. Under the terms of the agreement, the City assumed the role of funding, building, maintaining, and operating the trail, and accepted liability for all claims arising out of its construction, operation, and maintenance.

According to the interlocal agreement, executed in June 2012 before construction began on the first segment of the Appleway Trail, the trail was to "provide an important regional alternative transportation and recreation amenity." *Id.* at 21. The trail area is zoned as "'Parks, Recreation, and Open Space'" and is managed by the City's parks

and recreation department. The City's comprehensive plan lists the Appleway Trail as a "recreational asset[ ]." *Id*. at 165.

Funding for the trail came partially from the United States Department of Transportation, Federal Highway Administration's Congestion Mitigation and Air Quality Program. This program apportions funds for projects that are "primarily for transportation purposes rather than recreation[al] purposes." *Id.* at 101. In its funding application, the City explained the trail would facilitate "non-motorized modes of travel and improve safety for bike and pedestrian traffic through the commercial core of the Spokane Valley." *Id*. The application stated the "primary purpose" of the trail project "is to get pedestrians and bicyclists off of" a busy City thoroughfare. *Id.* at 106. The application repeatedly referred to the trail as something that would provide for "transportation." *Id*. at 102-06, 109. The application mentioned recreation as merely "another benefit" of the trail. *Id*. at 109.

Ms. Keenan and her husband jointly sued the City for negligence and loss of consortium, based on the June 26 incident. The City moved for summary judgment and dismissal of all claims, asserting recreational immunity under RCW 4.24.210. The Keenans countered that recreational immunity was not available because the Appleway Trail's primary purpose was to provide for transportation, not recreation.

Alternatively, the Keenans argued that even if the City qualified for recreational immunity, an exception to immunity applied because the injury-causing condition was dangerous and latent.

The trial court granted summary judgment to the City, reasoning recreational immunity applied and there were no issues of fact regarding a dangerous and latent condition. The Keenans moved for reconsideration, which was also denied. They now timely appeal.

## ANALYSIS

Because this matter comes to us on an order granting summary judgment, our review is de novo. *Young v. Key Pharms. Inc.*, 112 Wn.2d 216, 226, 770 P.2d 182 (1989), *overruled in part on other grounds*, 130 Wn.2d 160, 922 P.2d 59 (1996) (plurality opinion). The question is whether, viewing the evidence in the light most favorable to the nonmoving parties, the Keenans, there is a genuine issue of material fact for trial. *Id*. at 225.

*Recreational immunity*

The Washington Legislature enacted the recreational immunity statute in 1967 to encourage landowners to make their property "available to the public for recreational

purposes by limiting their liability" to land users. RCW 4.24.200. The statute provides,

in pertinent part:

> Except as otherwise provided . . . any public or private landowners, hydroelectric project owners, or others in lawful possession and control of any lands whether designated resource, rural, or urban, or water areas or channels and lands adjacent to such areas or channels, who allow members of the public to use them *for the purposes of outdoor recreation* . . . without charging a fee of any kind therefor, shall not be liable for unintentional injuries to such users.

RCW 4.24.210(1) (emphasis added).

Recreational immunity is an affirmative defense to a claim of liability, meaning

"the landowner bears the burden of proving entitlement to that immunity." *Schwartz*

*v. King County*, 200 Wn.2d 231, 238, 516 P.3d 360 (2022). Under our case law, a

landowner must prove four elements to be entitled to recreational immunity: (1) the

landowner was in lawful possession and control of the land, (2) the land was open to

the public (3) for recreational purposes, and (4) no fee was charged. *Camicia v. Howard*

*S. Wright Const. Co.*, 179 Wn.2d 684, 695-96, 317 P.3d 987 (2014).

Here, the parties do not dispute the first, second, and fourth elements. Their

disagreement is centered around whether the trail was open for purposes of recreation.

The Keenans argue there are issues of material fact as to whether the Appleway

Trail was open for purposes of recreation. They contend immunity does not apply when

the land is opened *primarily* for a nonrecreational purpose, even if there is *some*

recreational use or purpose. Relying on *Camicia*, the Keenans argue if land would remain

open to the public even absent any recreational use or purpose, then the land was not open

primarily for recreational purposes, and immunity does not apply. Appellants' Opening

Br. at 14 (citing *Camicia*, 179 Wn.2d at 697). According to the Keenans there are issues

of fact as to whether the primary purpose of the trail was for transportation use, and

therefore summary judgment was improper.

The Keenans' primary purpose argument is derived from some confusing language

in *Camicia*. In discussing whether a bicycle trail on Interstate 90 (I-90) was open to

the public for recreational purposes, *Camicia* leaned heavily on the purpose of the

recreational immunity statute. The Supreme Court reasoned a landowner will not

be induced by the promise of immunity to open the land to recreation if the land is already

open to public use for other purposes. *Camicia,* 179 Wn.2d at 697. Thus, the mere fact

of "incidental recreational use of land" is insufficient to qualify for recreational use

immunity. *Id*. After *Camicia*, it was arguably unclear how recreational immunity would

apply to properties that are subject to mixed use. According to the dissent in *Camicia*,

the majority conferred immunity "only if the land is held open to the public solely for

7

recreational use." *Id*. at 703 (Madsen, J., dissenting). The dissent lamented that *Camicia* stood for the rule that land opened for mixed purposes would not be protected. *Id*.

The Supreme Court addressed the confusion caused by *Camicia* in the subsequent case of *Lockner v. Pierce County*, 190 Wn.2d 526, 415 P.3d 246 (2018). The *Lockner* court explained that summary judgment had been improper in *Camicia* because there were issues of fact as to whether the trail there was open to recreation "at all." *Lockner*, 190 Wn.2d at 534. Because there was some evidence that the I-90 trail in *Camicia* was opened solely for transportation purposes, and that any recreational use was merely incidental, *Lockner* clarified that was the reason why summary judgment was improper in *Camicia*. *Id*. (noting disputed issues of fact as to whether the I-90 trail "could be used for recreation").

The facts in *Lockner* differed from those in *Camicia*. In *Lockner*, there was no evidence indicating the county intended the trail where that accident happened was "to be used exclusively for transportation." *Id*. at 536. Rather, the evidence was that the county designed and maintained the trail through its parks and recreation department with recreation in mind. *Id*. at 530, 536. This was sufficient to meet the recreational purpose requirement, regardless of whether the county also intended to open the trail to nonrecreational uses.

8

*Lockner*'s refinement of *Camicia* clarified the rule governing recreational

immunity claims. Under *Lockner*, the recreational purpose requirement will be met so

long as one of a landowner's purposes in opening property to the public is recreation. *Id*.

at 534 (test is whether the land was open for recreation "at all"). The existence of other

nonrecreational purposes does not defeat the recreational purposes criterion.[2]

*Lockner*'s rule comports with the plain text of RCW 4.24.210, which states it

applies to land opened to the public "for the purposes of outdoor recreation." It does

not say the land must be open *primarily* for recreational purposes. Indeed, the statute

specifically mentions "hydroelectric project owners" as potential beneficiaries of

immunity. *Id*. The primary purpose of a hydroelectric project is obviously not recreation.

But if a hydroelectric project owner opens their land to the public for recreation without

charging a fee, then statutory immunity will apply. Under the immunity statute, what

---

[2] It bears emphasis that under the rule recognized in *Lockner*, it is the landowner's objective purpose that prevails in this part of the analysis. *Id*. at 535 ("Whether land has been opened for recreation is to be viewed from the objective standpoint of the landowner."). The landowner's purpose might be discerned from how the land is actually used. But to discern purpose from use, it is likely that "more than incidental . . . use may be required." *Id*. at 529. The fact that it is proper to weigh usage when discerning a landowner's objective purpose does not mean use immunity is limited to situations where a landowner's recreational purpose is more than incidental. *Id*. at 533 (Immunity does not turn on whether the landowner's recreational purpose is "'primary,'" "'secondary,'" or "incidental.") (quoting *McCarver v. Manson Park & Recreation Dist.*, 92 Wn.2d 370, 377, 597 P.2d 1362 (1979).

matters is that the landowner opened the land for recreational purposes, not the

importance of the recreational purpose as compared to other purposes.

Whether land has been opened[3] to the public for recreational purposes is a matter

that must be viewed from the objective standpoint of the landowner. *Lockner*, 190 Wn.2d

at 535. Evidence of the landowner's purpose may be derived from a variety of sources,

including the landowner's treatment of the property, *Camicia*, 179 Wn.2d at 700

(maintenance of trail as part of city's park system suggestive of recreational purpose);

property transfer records, *id*. at 701 n.6 (statement in deed reserving the trail for

"'road/street purposes only'" is evidence of nonrecreational purpose); funding

documents, *id.* at 700 (lack of recreational funds used for the project is evidence of

nonrecreational purpose); public declarations of purpose, *Lockner*, 190 Wn.2d at 536

(statements made on website and by park officials); and patterns of actual usage, *supra*

note 2.

Here, like *Lockner*, there is no evidence the Appleway Trail was opened

exclusively for nonrecreational purposes, such as transportation. The strongest argument

---

[3] Though not at issue here, it is apparent that when assessing whether land has been opened for recreational purposes, we do not look at the original intent of the landowner at the time of the initial opening, but how the land was made open to the user at the time of alleged liability. *See Riksem v. City of Seattle*, 47 Wn. App. 506, 510, 736 P.2d 275 (1987).

the Keenans can make is that the trail was opened *primarily* for transportation purposes, as set forth in the City's application for federal highway funds. But primacy is not the same thing as exclusivity. Even if the City's primary purpose for the Appleway Trail was transportation, this does not change the fact that the trail was also specifically open for recreation. So long as one of the City's purposes in opening the land to the public was recreation, the statutory requirement is met. It does not matter that the City's recreational purpose may have been less significant than other purposes. *See McCarver v. Manson Park & Recreation Dist.*, 92 Wn.2d 370, 377, 597 P.2d 1362 (1979) ("We decline to impose a limiting construction upon the statute differentiating land classifications based upon primary and secondary uses where the legislature did not.").

We agree with the trial court that the City is entitled to summary judgment on the issue of whether the Appleway Trail was opened for purposes of recreational use. This is not to say that application of recreational immunity is either fair or grounded in sound public policy. The world has changed since the legislature enacted the recreational immunity statute in 1967. It could be that, at least with respect to nonmotorized trails, the promise of immunity is no longer necessary to encourage landowners to open their properties to the public for recreation. But policy disputes are not our purview. If the Keenans or their amicus, the Washington State Association for Justice Foundation,

11

believe the recreational immunity statute is too broad, recourse may be sought from the

legislature.

*Whether an exception to RCW 4.24.210 applies*

Recreational immunity is not absolute. Even where the statute applies,

there are several exceptions that may still result in a finding of liability. Relevant here,

RCW 4.24.210(4)(a) provides that an otherwise immune landowner will remain liable

for injuries caused "by reason of a known dangerous artificial latent condition for which

warning signs have not been conspicuously posted." The burden of proving this exception

to recreational immunity falls on a plaintiff. *See Schwartz*, 200 Wn.2d at 239.

There are four elements to proving a latent condition exception. The condition

must be (1) known, (2) dangerous, (3) artificial, and (4) latent. *See Van Dinter v. City of

Kennewick*, 121 Wn.2d 38, 46, 846 P.2d 522 (1993). The City challenges the Keenans'

ability to prove the second and fourth elements, pertaining to dangerousness and latency.

Before addressing whether the Keenans have identified sufficient facts to meet

their burden of proof, we must first identify the injury-causing condition at issue. The

parties dispute whether Ms. Keenan was injured by a piece of black tubing that was

laying on the roadway or by some other piece of debris, including the lid to a 10-gallen

container. Viewing the evidence in the light most favorable to the Keenans, there is

evidence the black tubing caused Ms. Keenan to fall. While neither Ms. Keenan nor

Mr. Fisch noticed what caused the fall, an individual on the scene reportedly commented

that Ms. Keenan must have hit the black tubing. It is not clear whether this out-of-court

statement would be admissible at trial, but given the lack of objection we consider the

statement as some evidence that the injury-causing condition was the black tubing.

Having determined the condition at issue, the next step of our analysis involves

assessing whether the condition was dangerous. In the current context, a condition is

dangerous "if it imposes an unreasonable risk of harm." *Schwartz*, 200 Wn.2d at 240

(citing *State v. Dixon*, 78 Wn.2d 796, 804, 479 P.2d 931 (1971)).

The record on review contains at least a question of fact as to whether the

condition was dangerous. Ms. Keenan claims to have slowed her speed at the time she

hit the debris, yet she still broke her leg and injured her knee from the fall. The serious

nature of Ms. Keenan's injuries tends to indicate that the condition was dangerous. *See*

*Schwartz*, 200 Wn.2d at 243 ("We agree with the Court of Appeals that 'the very nature

of [Mr.] Schwartz's injury indicates that the bollard is dangerous.'"). Further, the fact that

the City had sent someone to clean up the construction debris suggests the debris posed a

danger. *See id.* (finding the fact that someone had written a warning that there was a

"POST" near the bollard suggested it posed an unreasonable risk). Reviewing the facts

and reasonable inferences in the light most favorable to the Keenans, a genuine dispute of material fact exists as to whether the debris posed an unreasonable risk of harm.

The last step of our analysis involves assessing whether the injury-causing condition was latent. In this context, a condition is latent "if recreational users will not be reasonably able to discover or protect themselves from that condition while engaged in recreational use of the land." *Id*. at 241. When a recreational user is a bicyclist, we must assess whether a dangerous condition would be readily apparent to a reasonable person engaged in this class of recreational use. *Id*. at 242-43.

The Keenans contend the injury-causing condition—the black tubing—was latent. They claim that from the perspective of a bicyclist, who travels at higher speeds than a pedestrian and must judge danger from afar, the black tubing looked very similar to an ordinary shadow. Further, they argue a jury could find a reasonable bicyclist in Ms. Keenan's situation would have focused on what was in front of them to avoid hitting the pedestrians and the truck. The City counters that the black tubing and other debris were readily observable to an objective viewer, thus they could not be deemed latent.

Reviewing the facts and reasonable inferences in the light most favorable to the Keenans, we find there are material issues of fact as to latency. Reproduced below are photos of the Appleway Trail taken by Mr. Fisch immediately after the incident.

14



CP Page 46



CP Page 48

Appellants Opening Br. at 49.

Contrary to the City's position, we do not find that the presence of the black tubing would have been obvious to a reasonable bicyclist. The tubing matched the color of the asphalt. It was located opposite some fence posts and below several telephone wires. To an individual approaching the area without any advance knowledge as to what they were viewing, the tubing might have appeared as a shadow or as nothing at all. On the facts before us, the Keenans are entitled to have a trier of fact decide whether the tubing lying in the trail qualified as latent.

Our assessment of the ambiguous nature of the tubing is underscored by the Supreme Court's decision *Schwartz*, where it was held that the injury-causing condition, a "bollard" or metal post meant to keep motorized vehicles off of the trail at issue, was latent. The court relied on unrebutted expert testimony that the overcast weather and lighting at the time of the accident caused the bollard to be "completely inconspicuous" and normal bicyclists would not have seen the bollard as they neared it. *Schwartz*, 200 Wn.2d at 235-36.

The bollard at issue was photographed and reproduced in the decision of Division Two of this court in *Schwartz v. King County*, 14 Wn. App. 2d 915, 943, 474 P.3d 1092 (2020) (Worswick, J., concurring and dissenting in part), *aff'd*, 200 Wn.2d 231, 516 P.3d 360 (2022):

16



The tubing in the current case is certainly more difficult to see than the bollard at issue in *Schwartz*. While the Keenans (unlike Mr. Schwartz) did not provide any expert analysis, we deem such assistance unnecessary. Even to the untrained eye, the black tubing depicted in the City's photo is difficult to see. The record reveals material issues of fact as to whether the injury-causing condition in this case was latent within the meaning of the recreational immunity statute.

## CONCLUSION

The order of summary judgment is affirmed in part and reversed in part. The order is affirmed as to the affirmative defense of recreational immunity. The order is reversed as to whether the Keenans can establish an exception to immunity based on a latent defect. We remand for further proceedings.

No. 39420-4-III
*Keenan v. City of Spokane Valley*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

I CONCUR:

_____
Cooney, J.

No. 39420-4-III

FEARING, C.J. (dissenting/concurring) — This appeal poses two distinct questions for resolution. First, whether a question of fact exists as to whether pipe laying on Spokane Valley's Appleway Trail constituted a latent condition for purposes of the recreational landowner immunity act? Second, whether the city of Spokane Valley opened the trail for recreational use within the meaning of RCW 4.24.210?

I concur in the majority's ruling that an issue of fact exists as to whether the presence of the pipe that caused Sarah Keenan's injuries was a latent condition. I disagree with the majority's ruling that as a matter of law Spokane Valley opened the trail for recreational use. At the least, the facts should be developed further before Spokane Valley receives a summary judgment order in its favor on this second question.

------------

The city of Spokane Valley built Appleway Trail on a portion of land earlier acquired by Spokane County. The county and the city entered an interlocal agreement for the construction and maintenance of the trail. The agreement read, in part:

> (b) Pursuant to RCW 36.68.090, counties acting through its board of county commissioners, are empowered to build, construct, care for, control, supervise, improve, operate and maintain parks, playgrounds, *bicycle and bridle paths and other recreational areas*.

(c) Pursuant to RCW 36.34.340, any county or city may acquire by purchase, gift, devise, bequest, grant or exchange title or any interest or rights in real property *for park or recreational purposes*.
. . . .
(g) Spokane County and City of Spokane Valley both recognize that having a multi-use trail along a portion of the Milwaukee Right-of-Way will provide an important *regional alternative transportation and recreation amenity* to the residents of Spokane County, including City of Spokane Valley. . . .
. . . .
[The parties] agree to continue their commitment to preserve the [trail site] for the full range of public uses, including but not limited to mass transit and public utility infrastructure and appurtenances.

Clerk's Papers (CP) at 22, 24 (emphasis added).

The city of Spokane Valley applied for matching funding, through the Federal Highway Administration's Congestion Mitigation & Air Quality (CMAQ) program, for a portion of the construction of Appleway Trail. The program apportions funds to states for qualifying projects that are "primarily for transportation purposes rather than recreational purposes." CP at 101. The federal funds may only be used for facilities used principally for transportation facilities. 23 U.S.C. § 217(i). The federal government funds recreational trails through a separate program. 23 U.S.C. § 206.

The application under the CMAQ program noted the desire to move pedestrians and bicycles from Sprague Avenue, a major east-west thoroughfare through Spokane Valley:

Bicyclists and pedestrians currently use Sprague Ave. Sprague has high traffic volumes and a high density of driveway approaches for adjacent businesses that do not encourage alternative modes of transportation and are not conducive to safe, efficient travel for non-vehicles.

2

CP at 100.  In order to procure the matching funding, Spokane Valley committed to apply

real estate excise tax revenue, typically reserved for transportation projects.

The application for federal funding emphasized that the project must be primarily

for transportation, not recreation, purposes.

> **Please describe how or why the project relates to the
> transportation system** (functional, proximity, or impact).  *Projects must
> be primarily for transportation purposes rather than recreational purposes*.
> Projects lacking a functional, proximity or impact linkage to the
> transportation system are not eligible.
>
> The proposed project promotes non-motorized modes of travel and
> improves safety for bike and pedestrian traffic through the commercial core
> of the Spokane Valley.  It also provides a direct connection to STA's
> [Spokane Transit Authority's] Valley Transit Center (VTC).  Transit Route
> 98 runs parallel to the proposed trail along Sprague Avenue and Route 97
> intersects the proposed trail at Sullivan Road.
>
> The City of Spokane Valley has identified the Appleway Trail as a
> key pedestrian and bicycle corridor in its Comprehensive Plan.  The length
> of the trail when it's completed will be 6.2 miles long.  Of that, the City has
> built or has funded 3.3 miles.  This grant request is to continue the trail
> further east for one mile from Evergreen to Sullivan Road.
>
> Completing the 6.2 miles of trail will provide a central east-west
> bike and pedestrian facility that provides access across the entire City along
> the City's core commercial zone. *The trail accesses services* such as health
> care, banking, postal and government services, retail services such as drug
> stores, supermarkets, office supply stores, and restaurants.  In addition, the
> trail provides access to multifamily housing and single-family housing
> along the corridor.  Employers such as the Numerica Corporate Offices,
> Monaco Enterprises, H & H Molds, and various retail services will allow
> walkers and *bikers to access jobs*.

CP at 113 (emphasis added).  The first paragraph of this section was embedded within the

application form.  Spokane Valley added the remaining language.

The application for federal funding further read:

 **2a.  Please describe how this project is consistent with Horizon 2040 Guiding Principle 1: Economic Vitality.**
 This project is consistent with Guiding Principle 1: Economic Vitality.  The Appleway Trail, when complete, will extend from University Avenue on the west through the entire City to the eastern border at Liberty Lake.  The intent of this trail is to provide multimodal transportation options to those who live and/or work in Spokane Valley.  The Trail will provide citizens the option to use other modes of transportation.  This enhances accessibility and connections among city centers, regional service centers and attractions, towns, and areas of regional employment.
 As the Appleway Trail continues to develop over time it will give the civic center and commercial core of Spokane Valley a sense of place.  It will provide mulitmodal access to businesses, help with re-development around the new City Hall and Park/Library sites, provide a place to hold community events and allow people to congregate to create a stronger and more connected community.  This project will also help stimulate new economic growth and vitality.

CP at 114.  As before, the first paragraph came with the application form.  Spokane Valley added the remaining language.

Another section in the application asked:

 **8b**. Does the project support health-promoting transportation options for people of all abilities and ages (walking, biking, transit, safe routes to school, etc.)?  If so, please describe.
 Yes, people who wish to exercise by biking and walking would have that choice.  The Appleway Trail is expected to be a good commuter route to replace single vehicle travel along Sprague Avenue; *however*, another benefit of this project is it gives people of all ages the opportunity to use the greenway trail for health-promoting transportation options and *family recreation*.

CP at 121 (emphasis added) (alteration in original).  The application, nonetheless, confirmed that the primary purpose of the trail was to "get pedestrians and bicyclists off of Sprague Avenue as much as practical, giving them a parallel route that would be 0.12 miles south of Sprague Avenue."  CP at 106.

4

The CMAQ application, in other sections, variously described the purpose of

Appleway Trail:

• "The project interconnects and serves multiple key destinations and transportation routes," improving employment and destination accessibility. CP at 102.

• "The plan under the Land Use chapter encourages the Sprague Avenue Regional/Community Commercial corridor be transformed into a quality mixed-use retail area. The plan states that retail development along the corridor should be concentrated at arterial intersections and designed to integrate auto, pedestrian, and transit circulation." CP at 103.

• "Although this is a trail project and will not carry freight, Sprague Ave. is on the Freight Priority Network, and taking pedestrian and bike commuting from off of Sprague Ave. would reduce bike and pedestrian conflicts with trucks." CP at 103.

• "The Appleway Trail Project provides a route for alternative transportation." CP at 103.

• "Constructing the Appleway Trail and providing an alternative form of transportation helps minimize impacts to natural resources and conserves non-renewable resources." CP at 104.

• "By partnering with Spokane County (on the use of the RR right-of-way) and STA (trailhead parking at VTC) this project maximizes the transportation investment and supports federal, state and local goals of providing multimodal transportation options." CP at 104.

• "Constructing this portion of the Appleway Trail takes much of the pedestrian and bicycle traffic off of Sprague Avenue." CP at 105.

• "The Sprague Corridor through Spokane Valley was built for automobiles and trucks with little consideration for pedestrian and bike traffic. Moving high traffic volumes through the city while accommodating pedestrians and bikes is difficult to perform safely and efficiently. A separated trail allows pedestrians and bicyclists to access the business district away from high traffic areas." CP at 106.

• "The Appleway Trail provides a safe and secure facility for shared use trail users. By providing a separated lighted facility, Sprague Avenue can be safely accessed by those choosing nonmotorized transportation or to those who can't use automobiles to access the business district." CP at 106-107.

As part of the request for federal funding, the city of Spokane Valley also signed a "Supplemental Project Application." The supplemental application again emphasized moving pedestrians and bicycles from Sprague Avenue. CP at 122. The supplemental application nowhere mentioned a recreational purpose for Appleway Trail.

In support of Spokane Valley's motion for summary judgment, city of Spokane Valley Senior Engineer Robert Lochmiller declared that the city intended Appleway Trail to serve as a "4.3-miles of continuous, paved trail providing pedestrian access for walking, running, bicycling, and other recreational uses." CP at 36. According to Lochmiller, the trail zoning is for parks, recreation, and open space. Spokane Valley included the cost of maintenance for the trail in its parks and recreation budget. In its 2016 comprehensive master plan, the city described Appleway Trail as a recreation asset.

Sarah Keenan sustained injuries on the first day that Spokane Valley opened Appleway Trail for public use. We do not know the purpose for which Sarah Keenan rode her bicycle on June 26, 2020.

----------

Two oddities complicate a resolution of this appeal. First, when one thinks of a "bike path," one automatically ponders exercise and recreation. A bike path may be the essence of an area used for exercise. Although we define recreation as fun and

6

enjoyment and exercise constitutes drudgery and work, exercise is deemed recreation.

Despite this observation, Spokane Valley has not argued that a bike path necessarily and

automatically qualifies for recreational land immunity.

Second, the subject of recreational landowner immunity creates two separate

categories, transportation and recreation, as if the two are mutually exclusive taxonomies.

Yet, the two activities may overlap. As one engages in ordinary tasks throughout the day,

she may walk or she may bicycle from place to place. A courier may ride his bicycle

from office to office for transportation purposes, yet he or she gains exercise while doing

so. When I walk five blocks to a restaurant from the courthouse, I also engage in a

minimal amount of exercise and the brisk air may restore and recreate my mind and soul.

----------

In a summary judgment motion, the movant bears the burden to demonstrate a lack

of a genuine issue as to a material fact and that, as a matter of law, summary judgment is

proper. *Hartley v. State*, 103 Wn.2d 768, 774, 698 P.2d 77 (1985). I must view the facts

in a light favorable to the nonmoving party, Sarah Keenan. *Barber v. Bankers Life &

Casualty Co.*, 81 Wn.2d 140, 142, 500 P.2d 88 (1972). I must also draw all reasonable

inferences from those facts in a glow benefiting Keenan. *EPIC v. CliftonLarsonAllen

LLP*, 199 Wn. App. 257, 268-69, 402 P.3d 320 (2017).

Viewing the facts in accordance with these principles of summary judgment

review establishes that the city of Spokane Valley repeatedly and emphatically wished to

move bicycle and pedestrian traffic from Sprague Avenue, a busy main thoroughfare

7

through the city and in order to accommodate the commercial interests of the city's

downtown. Thus, the overarching purpose of Appleway Trail is transportation in nature.

Use of the trail for recreation became an afterthought.

---------

Local governments encounter liability for injuries sustained on their property to

the same extent as any other landowner. RCW 4.96.010; *Schwartz v. King County*, 200

Wn.2d 231, 237, 516 P.3d 360 (2022). At common law, a landowner's duty depended on

the plaintiff's status as an invitee, a licensee, or a trespasser. *Tincani v. Inland Empire

Zoological Society*, 124 Wn.2d 121, 128, 875 P.2d 621 (1994). In 1966, this court

broadened the invitee classification to include the "public invitee," defined as one

"invited to enter or remain on land as a member of the public for a purpose for which the

land is held open to the public." *McKinnon v. Washington Federal Savings & Loan

Association*, 68 Wn.2d 644, 650, 414 P.2d 773 (1966).

The year after the Washington Supreme Court recognized public purpose invitees,

the legislature enacted Washington's recreational use immunity statute "to encourage

owners of land to make available land and water areas to the public for recreational

purposes by limiting their liability." LAWS OF 1967, ch. 216, § 1. To accomplish this

goal, our legislature changed the common law by statute, altering an entrant's status from

that of a trespasser, licensee, or invitee to a new statutory classification of recreational

user. *Lockner v. Pierce County*, 190 Wn.2d 526, 532, 415 P.3d 246 (2018). The

legislature carved an exception to the common law public purpose invitee doctrine by

8

exempting a particular "public purpose," that of outdoor recreation.  *Schwartz v. King County*, 200 Wn.2d 231, 238 (2022).  Washington's recreational use immunity statute affords a public or private landowner, who allows members of the public to use the land for the purposes of outdoor recreation, immunity against unintentional injuries to a user. RCW 4.24.210(1).

The controlling language of the recreational landowner immunity act or recreational use statute, RCW 4.24.210, declares:

> (1) Except as otherwise provided in subsection (3) or (4) of this section, any *public* or private *landowner*s,. . . who *allow* members of the *public* to use them for the *purposes of outdoor recreation*, which term includes . . . bicycling, . . . without charging a fee of any kind therefor, shall not be liable for unintentional injuries to such users.
> . . . .
> (4)(a) Nothing in this section shall prevent the liability of a landowner or others in lawful possession and control for injuries sustained to users by reason of a known dangerous artificial latent condition for which warning signs have not been conspicuously posted.

The statute references "allowing" members of the public to use the land for recreation, while Washington case law references "opening" the land for recreational purposes. *Schwartz v. King County*, 200 Wn.2d 231, 238 (2022); *Camicia v. Howard S. Wright Construction Co.*, 179 Wn.2d 684, 696-702, 317 P.3d 987 (2014); *Lockner v. Pierce County*, 190 Wn.2d 526, 529-38 (2018); *Jewels v. City of Bellingham*, 183 Wn.2d 388, 391, 353 P.3d 204 (2015), *abrogated by Schwartz v. King County*, 200 Wn.2d 231 (2022); *McCarver v. Manson Park & Recreation District*, 92 Wn.2d 370, 375 n.3, 597 P.2d 1362 (1979);  *Riksem v. City of Seattle*, 47 Wn. App. 506, 510-11 (1987).  The

9

statutory language may extend immunity beyond circumstances covered by decisional

law's employment of the phrase "opening of the land for recreation."

In assessing recreational landowner immunity, the court views the property from

the standpoint of the landowner or occupier. *Lockner v. Pierce County*, 190 Wn.2d 526,

535 (2018); *Gaeta v. Seattle City Light*, 54 Wn. App. 603, 608-09, 774 P.2d 1255 (1989),

*abrogated on other grounds by Jewels v. City of Bellingham*, 183 Wn.2d 388 (2015).

The individual user's purpose for occupying the property lacks importance. Recreational

use immunity is an affirmative defense, so the landowner bears the burden of proving

entitlement to that immunity. *Camicia v. Howard S. Wright Construction Co.*, 179

Wn.2d 684, 693 (2014).

Two Washington Supreme Court decisions decided in the last decade inform our

decision: *Lockner v. Pierce County*, 190 Wn.2d 526 (2018); *Camicia v. Howard S.

Wright Construction Co.*, 179 Wn.2d 684 (2014). An extensive review of the facts and

reasoning of each case is warranted. I add a brief examination of *Riksem v. City of

Seattle*, 47 Wn. App. 506 (1987).

In *Riksem v. City of Seattle*, Anton Riksem sued the city of Seattle for injuries

sustained on the Burke-Gilman Trail. This court affirmed summary judgment dismissal

of the suit based on the recreational use statute. Riksem sought to avoid application of

immunity by characterizing the trail as a "mixed-use" trail. He called the trail a

commuter trail. The court answered that immunity to the city would extend to

commuters also. The court observed that an individual commuting from one point to

another, by either walking, running, or bicycling, at least secondarily gains the benefits of recreation even though his primary goal may be the actual act of commuting. The court did not suggest, however, that the owner of a trail primarily used for commuting would enjoy immunity. More importantly, the court commented: "the manifest object of the Recreational Use Statute is to provide free recreational areas to the public on land and in water areas that might not otherwise be open to the public." 47 Wn. App. 506, 511 (1987).

*Camicia v. Howard S. Wright Construction Co.*, 179 Wn.2d 684 (2014), concerned the Interstate 90 (I-90) bicycle trail built by the Washington State Department of Transportation (WSDOT) in the late 1980s. Susan Camicia suffered paralyzing injuries while riding her bike on a portion of the trail inside the city of Mercer Island. The trail runs from Seattle to Mercer Island across Lake Washington and to other areas in the Puget Sound.

In October 2002, WSDOT published an evaluation of whether the I-90 bicycle trail constituted a public park or recreation area for purposes of federal law. Under the provision of the Department of Transportation Act of 1966 known as "Section 4(f)," the secretary of transportation may approve a transportation project's use of a public park or recreation area only if no reasonable alternative exists and all measures to reduce harm are taken. 49 U.S.C. § 303(c). Consideration under Section 4(f) is not required, however, when the officials having jurisdiction over the site determine that recreation is not a major purpose of the land and is only a secondary or occasional purpose. Former

11

23 C.F.R. § 771.135 (2002). In a policy paper, the Federal Highway Administration (FHA) advised local officials that when a bikeway "is primarily for transportation and is an integral part of the local transportation system," Section 4(f) does not apply. *Camicia v. Howard S. Wright Construction Co.*, 179 Wn.2d 684, 688 (2014). WSDOT concluded that, because the I-90 trail was neither a public park nor recreation land for purposes of federal law, it was not a Section 4(f) resource.

WSDOT determined that the I-90 trail was primarily for transportation. WSDOT underscored that the trail was built as part of a multi-modal transportation facility, using federal and state highway funds. WSDOT did not employ funds designated for recreational facilities when constructing the path. The department used separate accounts to ensure the separation of recreational and transportation funds. Although pedestrians used the trail, WSDOT designed and built the path primarily for use by bicycles. While WSDOT recognized some would use the path for recreational purposes, the department perceived this purpose to be minimal and insignificant in comparison to its transportation function. WSDOT noted the trail served as the only means for nonmotorized access to Mercer Island and across Lake Washington and thus functioned as an important link in the regional transportation system.

After construction, WSDOT arranged to cede ownership of the portion of the trail running over Mercer Island. In 1987, the city and WSDOT entered into the "'I-90 Turnback and Landscape Maintenance Agreement.'" Under the agreement, WSDOT agreed to pay the city to maintain and landscape these transit facilities until transfer of the

trail land to the city. In 1991, the city of Mercer Island created a document entitled "City of Mercer Island Comprehensive Park, Recreation, Open Space, Arts and Trails Plan." The document identified the I-90 Trail and Linear Park as park lands and mentioned that the city would heavily landscape the area.

On April 1, 2000, WSDOT conveyed to the city of Mercer Island that portion of the trail where Camicia suffered her injuries. The quitclaim deed provided:

> It is understood and agreed that the . . . property is transferred *for road/street purposes only, and no other use shall be made of said property without obtaining prior written approval of the* grantor. It is also understood and agreed that the grantee, its successors or assigns, shall not revise either the right of way lines or the access control without prior written approval from the grantor, its successors or assigns.

*Camicia v. Howard S. Wright Construction Co.*, 179 Wn.2d 684, 690 (2014). Despite this language, the city, during litigation, contended it intended the trail to be primarily recreational in nature. Mercer Island emphasized a local ordinance prohibiting adult entertainment facilities near the trail while allowing such facilities near other public streets. Additionally, the city parks department maintained the I-90 Trail and Linear Park, while city streets were maintained by a separate department.

Susan Camicia sued the city of Mercer Island, who asserted immunity under the recreational landowner immunity act. The trial court granted Mercer Island summary judgment based on immunity. This court reversed. In a 5 to 3 decision, the Washington Supreme Court held that a question of fact existed as to whether the trail was open for recreational purposes. The Supreme Court affirmed this court.

13

In *Camicia v. Howard S. Wright Construction Co.*, the Supreme Court rejected

Mercer Island's view that recreational immunity follows from the mere presence of

incidental recreational use of land open to the public. The court discussed *Riksem v. City*

*of Seattle*. According to the Supreme Court, Anton Riksem did not dispute that the trail

was open to the public for the purposes of outdoor recreation or that he was a recreational

user. Accordingly, the court did not address whether immunity would apply on land open

to the public for nonrecreational purposes. The Supreme Court mentioned, however, that

*Riksem* announced the proposition that the manifest object of the recreational use statute

is to provide free recreational areas to the public on land and in water areas that might not

otherwise be open to the public. The Supreme Court neither expressly approved or

rejected the proposition. Nevertheless, in a passage critical to Sarah Keenan's suit, the

court reasoned:

> Extending the reach of RCW 4.24.210 to land that is open to the
> public for purposes other than recreation simply because some recreational
> use occurs not only undermines the statute's plain language and the
> legislature's intent but would also unjustly relieve the government of its
> common-law duty to maintain roadways in a condition reasonably safe for
> ordinary travel. Recreational immunity would conceivably extend to every
> street and sidewalk in downtown Seattle, as these are open to the public
> without charge. Indeed, many streets and roads present some opportunity
> for "viewing or enjoying historical . . . sites," another recreational purpose
> under the statute. It would be absurd if Seattle could assert recreational use
> immunity for injury to a visitor to Pioneer Square simply because tourists
> are permitted to enter it without charge to view "scenic . . . sites." We
> avoid any reading of the statute that would result in unlikely, absurd, or
> strained consequences. Erasing this long-standing duty was obviously not
> the purpose of the recreational immunity statute.

14

*Camicia v. Howard S. Wright Construction Co.*, 179 Wn.2d 684, 690 (2014) (citations omitted).

The Supreme Court concluded that reasonable minds could differ whether the I–90 trail was opened for the purpose of recreational use. Mercer Island's showing that the I-90 trail was opened for bicycling did not alone afford immunity. Even though the recreational use statute mentions bicycling, bicycling is not always a recreational activity. Statutes variously treat bicycles and bike paths in a recreational context and at other times statutes treat them as part of the transportation system. Courts should view bicycles and paths on a case-by-case basis and without any continuity. RCW 35.75.060 directs that certain funds may be expended on bicycle paths on the condition that the paths shall be suitable for bicycle transportation purposes and not solely for recreation purposes.

The three-judge dissenting panel, led by Justice Madsen, characterized the majority as holding that RCW 4.24.210 confers immunity only if land is held open to the public solely for recreational use. The dissent concluded that such a holding misread the statute. The statute did not pose such an either transportation or recreation division. The dissent would have affirmed the summary judgment order in favor of Mercer Island because, although the I-90 trail might be intended for transportation purposes, the city also opened the trail for recreation. The dissent worried that landowners would no longer open their property to the public for recreation use out of concern for liability to recreation users. The public will lose outdoor recreational opportunities. The dissent criticized the majority for worrying and raising ghosts that any road or street would

qualify as recreational use because travel on byways could be sightseeing. According to

the dissenters, the landowner must affirmatively make the land available for recreation.

If a government claimed that city streets constituted recreational land for purposes of

immunity because of sightseeing or pleasure driving, a court should recognize the ruse

and make the determination that, as a matter of law, reasonable minds cannot differ that

cities and other government entities do not open their general street, road, highway, and

freeway systems as recreational land. The dissent noted that, unlike city streets, bicycle

trails exclude motorized vehicles. The dissent did not mention that sidewalks also

exclude motorized vehicles.

Four years later, the Washington Supreme Court decided *Lockner v. Pierce

County*, 190 Wn.2d 526 (2018). In an opening paragraph, the high Court penned:

> While more than incidental recreational use *may* be required, sole
> recreational use is not required before conferring immunity to landowners.

*Lockner v. Pierce County*, 190 Wn.2d 526, 529 (2018) (emphasis added). Because of no

need to do so, the Court did not hint as to how much recreation use the city must allow or

the amount of recreation use that must actually transpire before a trail qualifies for

recreation use immunity. One might even argue that, because of the insertion of the word

"may" in the first clause of the sentence, the court no longer maintains that incidental use

disqualifies the land for immunity.

Margie Lockner road her bicycle on Foothill Trails, a nonmotorized asphalt trail

on land owned by Pierce County. The county website for the trail described it as a

popular commuter route and recreational destination for bicyclists. In its regional plan, the county envisioned that its trail system would become a network for recreation, provide transportation routes, and connect the county to other regional destinations. The Pierce County Parks and Recreation Department announced the section of the Foothills Trail where Lockner was injured as designed and maintained for recreational use and open for recreation between 8 a.m. and 5 p.m.

The superior court granted Pierce County summary judgment on the basis of the recreational use statute. This court reversed by adopting the dissenting opinion's characterization of the majority opinion, in *Camicia v. Howard S. Wright Construction Co.*, as holding that the land must be exclusively devoted to recreation to enjoy immunity. A unanimous Supreme Court reversed this court and reinstated summary judgment for Pierce County.

The Supreme Court recognized that RCW 4.24.210 does not say that land must be open for "only" recreational purposes. The statute falls silent as to whether mixed public uses, that is recreation and some other public activity, affect immunity. Because RCW 4.24.210 does not restrict recreational use immunity to land used solely for recreation, the court would not read such meaning into the statute.

In her concurrence, in *Lochner*, Justice Madsen commented that the majority was adopting her dissenting opinion in *Camicia*. The majority disagreed. The majority wrote that the deed transferring ownership of the I-90 trail from WSDOT to Mercer Island was critical to the ruling in *Camicia*. Viewed in a light most favorable to Susan Camicia, the

17

deed suggested the city could not close the trail to transportation and a fact finder could infer the trail would be open for transportation regardless of any recreational use. Nevertheless, the deed read differently. The deed did not seek to prevent closure of the trail for transportation. The deed instead read that the trail should only be used for transportation purposes. Still, according to the court, whether the trail could be used for recreation was a disputed fact that consequently precluded determining the legal question of whether recreational immunity was applicable. At the same time, the court correctly characterized the I-90 trail as used primarily for transportation, implying that incidental use for recreation still did not afford the landowner immunity. The court noted that, if sole recreational use was required, the *Camicia* court would not have remanded the question of liability, but rather declared as a matter of law that Mercer Island lacked immunity.

The Supreme Court concluded that the undisputed facts showed the Pierce County Foothill Trails to be open for recreation purposes, although one website mentioned the trail as both a commuter route and recreational destination. County officials averred in support of the summary judgment motion that the county operated and maintained the trail section specifically for recreation. According to the court, although some individuals might stroll on the trail to work, walking through a park to get to a jobsite did not eliminate immunity.

Sarah Keenan's appeal illustrates the struggle that the bar and lower courts will encounter in juxtaposing the ruling in *Camicia v. Howard S. Wright Construction Co.* and

the decision in *Lockner v. Pierce County*. In resolving this struggle, I first identify propositions for which *Camicia* may stand. According to *Camicia*, when adjudging whether the owner of trail land enjoys immunity, the court must consider the federal government's characterization of the trail if the federal government provides funding for trail construction. If the city uses federal funds earmarked for transportation and does not use federal funds designated for recreational purposes, the city likely loses immunity. The court should not count secondary purposes for the trail. The city's designations for the trail as park lands lacks significance. Maintenance by the municipality's parks department holds no importance. A city ordinance that recognizes the trail as recreational in nature bears no weight. A court should question the city's characterization of the trail asserted by the city during litigation. A deed limiting a trail to transportation purposes defeats recreation use immunity. Finally, opening the trail for bicycling does not suffice when the city received transportation funds from the government.

The majority of this court reasons that most of the propositions listed above do not survive the Supreme Court decision in *Lockner v. Pierce County*. I wonder if all of the takeaways I have gleaned from *Camicia* remain valid now that we live in the *Lockner* era, but I deem the majority to paint bluntly and haphazardly when ignoring all of the principles possibly arising from *Camicia*.

This court's majority reads *Lockner* as limiting *Camicia* to circumstances wherein a question of fact exists as to whether the city opened the trail solely for transportation purposes. The Supreme Court, in *Lockner*, characterized, as critical to the decision in

*Camicia*, the deed to Mercer Island even though the decision easily reads that other factors were just as important. But, *Lockner* nowhere reads that the city must open a trail solely for transportation purposes to enjoy immunity. This court's majority further writes that, if one of the purposes of the park is recreation, the city enjoys immunity. I do not read *Lockner* so broadly. Such a reading conflicts with the decision's opening language suggesting that incidental recreation does not necessarily afford immunity.

The Washington Supreme Court, in *Lockner v. Pierce County*, insisted that its ruling played in harmony, if not in unison, with the decision in *Camicia v. Howard S. Wright Construction Co.* The Washington Supreme Court, in *Lockner*, did not overrule *Camicia* or even suggest that any of the teachings from *Camicia* no longer hold validity. *Lockner* suggests that the city must intend more than incidental use of the trail for recreation to gain immunity, although *Lockner* provides no guidelines for assessing incidental use.

Appleway Trail lies metaphorically in between the I-90 trail, in *Camicia v. Howard S. Wright Construction Co.*, and the Foothills Trail, in *Lockner v. Pierce County*. But, except for the lack of a constraining transfer deed to the city of Spokane Valley, Appleway Trail abuts the I-90 trail within the legal atmosphere. Spokane Valley solicited and received federal funds for a transportation trail. Spokane Valley intends the trail to substitute for pedestrian and bicycle traffic on Sprague Avenue. If Sprague Avenue does not enjoy recreational landowner immunity, the trail also should not benefit from immunity. The city should not be free to represent to the federal government that the city

intends transportation to be the principal purpose of the trail and then assert other purposes during litigation. The recreation use statute never intended to shield a municipality from liability for conditions on major thoroughfares.

Sarah Keenan argues that, based on *Riksem v. City of Seattle* and *Camicia*'s reference to *Riksem*, the law disavows immunity for the trail if the city would have opened the trail regardless of the lack of any recreation users. I need not and do not rely on this argument for purposes of advocating reversal of the superior court's ruling on recreational use. I doubt, however, that any such rule, if it ever existed, survived *Lockner v. Pierce County*.

----------

Some important questions as to Appleway Trail remain unanswered by the summary judgment record. The questions include: from what sources did the city of Spokane Valley gain funding for other portions of construction of the trail? Did Spokane Valley enter into any contract with the federal government when receiving the funding, and, if so, what were the terms of the contract? What was the nature of funds used by Spokane Valley for its contribution to construction costs? Did the city perform any studies as to the number of transportation users of the trail as opposed to recreational users? Did Spokane Valley announce to the public the opening of Appleway Trail? If so, did the announcement mention the trail's availability for recreational use? Would Appleway Trail be open to the public even in absence of a partial recreational purpose?

21

We may reverse an order for summary judgment and remand for further proceedings when we are unable to determine whether genuine issues of material fact will ultimately require trial. *Kilcullen v. Calbom & Schwab, PSC*, 177 Wn. App. 195, 202, 312 P.3d 60 (2013). A remand may be warranted when the parties failed to fully develop and present important facts needed to resolve the issue on summary judgment, assuming the issue should be resolved summarily. A court may deny a summary judgment motion when it deems a further inquiry into the facts is desirable. *Ragonese v. Racing Corp. of West Virginia*, 234 W. Va. 706, 769 S.E.2d 495, 498 (2015).

Summary judgment serves as a proper and valuable instrument for preventing useless trials, but the procedure should not be used when a real doubt exists as to decisive factual issues. *Bartlett v. Northern Pacific Railway Co.*, 74 Wn.2d 881, 883, 447 P.2d 735 (1968). To satisfy its burden on summary judgment, the movant must make a showing that it is quite clear what the truth is and that excludes any real doubt as to the existence of any genuine issue of material fact. *Sena v. American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 53, 213 A.3d 1110 (2019). A summary judgment should not be granted unless the facts are so crystallized that nothing remains but questions of law. *Moore v. Morris*, 475 So. 2d 666, 668 (Fla. 1985). Summary judgment should not be granted in the face of "many factual uncertainties." *Wells Fargo Business Credit v. Hindman*, 734 F.3d 657, 670 (7th Cir. 2013); *Northfield Insurance Co. v. Mt. Hawley Insurance Co.*, 454 N.J. Super. 135, 146, 184 A.3d 517 (2018). Underpinning

these rules comes the recognition that the city of Spokane Valley carries the burden of proof both as the summary judgment movant and the party seeking immunity.

Because the Supreme Court shapes the law on a case-to-case basis, the Supreme Court has yet to entertain the opportunity to fully delineate the law with regard to the extent to which a city must open a trail for recreation when the city principally intends the trail to accommodate transportation. The law does not favor the use of summary judgment, when factual development is necessary to clarify the application of the law. *Henderson v. Coombs*, 192 W. Va. 581, 453 S.E.2d 415, 419 (1994); *Lawver v. Boling*, 71 Wis. 2d 408, 413-14, 238 N.W.2d 514 (1976). Despite the expense of litigation, the law would benefit from the full development of the facts in this dispute before appellate review.

I dissent/concur:

_____
Fearing, C.J.

23